THOMAS *v.* STATE.

(Division B. May 8, 1933. Suggestion of Error Overruled May 22, 1933.)

[148 So. 225. No. 30458.]

**J. W. Conger**, of Winona, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **J. W. Conger**, for appellant, and by **W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Anderson, J.**, delivered the opinion of the court.

Appellant was indicted and convicted in the circuit court of Carroll county of the crime of robbing Lemon Minyard of a cow and yearling, and sentenced to the penitentiary for the term of three years. From that judgment he prosecutes this appeal.

The evidence which was accepted by the jury as true was substantially as follows: appellant is a white man; Lemon Minyard is a negro. Appellant had a dog which was a "suck-egg" dog. For a period of about two months before the alleged robbery, appellant's dog had been going at night upon the premises of Lemon Minyard and sucking his eggs. He had run the dog away from his premises several times. On Saturday night before the alleged robbery, the dog appeared again upon Lemon Minyard's premises near his home. Minyard

shot at the dog and killed it. In some manner appellant learned of the killing of his dog, and on the next Monday morning after the killing, armed with a shot gun, he went with his two sons into the field where Minyard was at work. Appellant charged Minyard with killing his dog, which Minyard admitted. Appellant thereupon cocked his gun and threw it upon Minyard and ordered him to throw up his hands, which he did. Appellant's sons then searched him. Appellant demanded that Minyard either pay him twenty dollars or, in lieu thereof, turn over to him a cow and a yearling for the loss of his dog. Minyard was unable to pay the twenty dollars, and through fear of either death or great bodily harm at the hands of appellant turned over to him a cow and a yearling which he owned. Appellant and his sons drove the cow and yearling away to appellant's home. Appellant told Minyard before he left that he could redeem the cow and yearling by paying him twenty dollars for the killing of the dog.

Appellant's only assignment of error is that the court erred in overruling his motion to exclude the evidence and direct a verdict of not guilty.

Under the law intent to steal is an indispensable element of robbery, but the theft may be committed openly and publicly as well as clandestinely; secrecy is not a necessary ingredient of the crime. Appellant argues that under the evidence in this case there was an entire absence of any proof of an intent on his part to steal the cow and yearling; that, on the contrary, the evidence demonstrates that in the taking of the cow and yearling he was only collecting an honest debt Minyard was due him for the killing of his dog. There is no decision of our court in point. The authorities elsewhere are divided. Some courts hold that it is not robbery where the defendant by intimidation and fear compels his debtor to pay that which the defendant in good faith believes to be a just and honest debt due him, that in such a case the

felonious intent is wanting. 54 C. J. 1028, sec. 52; State v. Hollyway, 41 Iowa, 200, 203, 20 Am. Rep. 586; State v. Culpepper, 293 Mo. 249, 238 S. W. 801; Butts v. Com., 145 Va. 800, 133 S. E. 764. The authorities holding to the contrary are Fannin v. State, 51 Tex. Cr. 41, 100 S. W. 916, 918, 10 L. R. A. (N. S.) 744, 123 Am. St. Rep. 874; Tipton v. State, 23 Okla. Cr. 86, 212 Pac. 612, 31 A. L. R. 1074.

In the Fannin Case the Texas court, in discussing the question, used this language: "This is more than a simple trespass, and it will be a dangerous doctrine to hold that a man can thus collect his debts. If it was specific property that appellant had a right to, under the circumstances he might use force to get or regain possession of same without being guilty of robbery; and, under the circumstances of this case, where appellant had no right to any specific property, the prosecutor owing him a debt for wages, the amount of which was even controverted, and he simply drew a pistol and made prosecutor pay him what he (appellant) claimed was due, we hold that this was not a good defense, and the court did not err in charging the jury as he did."

It has been held that the rule that the taking under a claimed right is not robbery should not be extended so as to protect one who by force or intimidation collects unliquidated damages. The Supreme Court of Oklahoma in the Tipton case, in discussing this question, used this language, in a prosecution for robbery, "where the taking of the property is for the purpose of forcibly collecting uncertain unliquidated damages as compensation for an alleged felonious assault on the taker's wife, such forcible taking may constitute robbery and does not come within the rule that the forcible taking and retention of the property of another for the purpose of paying or securing the payment of a debt might not be deemed robbery."

We are not called upon to decide in this case whether

or not the collection by force or intimidation of a liquidated debt honestly believed to be due constitutes robbery, for a debt of that character is not involved. Here, if appellant had any claim at all against Minyard it was for unliquidated damages for the killing of his dog. Minyard was not guilty of malicious mischief in the killing of the dog. Ainsworth v. State (Miss.), 147 So. 815; Griffy v. State, 118 Miss. 64, 79 So. 3; Stephens v. State, 65 Miss. 329, 3 So. 458. There is serious doubt as to Minyard's civil liability for the killing of the dog. Under such a state of facts, we think the Tipton case applies with special force; the reasoning of that case appeals to us as sound.

Affirmed.