HERRON *v.* STATE.

(Division B.   Nov. 9, 1936.)

[170 So. 536.   No. 32431.]

Byrd P. Mauldin, of Pontotoc, for appellant.

**Webb M. Mize**, Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

Appellant, Lehman Herron, was indicted in the circuit court of Pontotoc county on a charge of robbery, tried and convicted and sentenced to serve three years in the state penitentiary, from which this appeal is prosecuted. The indictment alleged that ''Lehman Herron, late of the county aforesaid on the 16th day of September, 1935, with force and arms in the county aforesaid, and within the jurisdiction of this court, in and upon one Frank Kincade, did unlawfully and feloniously make and assault and him, the said Frank Kincade, did then and there feloniously put in fear of some immediate and injury to his person, and in the presence and from the person of the said Frank Kincade and against his will did feloniously rob, steal, take and carry away one two year old mare horse, of the value of Fifty Dollars in good and lawful money of the United States, the personal property of Charlie Morris, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.''

It appears that Charlie Morris made a trade with Tom Herron, father of appellant, to sell him a mule, taking as part payment thereof the mare mentioned in the indictment for a fifty dollar cash payment, and a note for the balance. The mare was left with Morris, and he and Kincade were taking it to a place for breeding purposes when they were accosted by Tom Herron and appellant, and both objected to the mare being bred on the ground that she was too young. Morris and Kincade, who was in charge of the mare for Morris, started toward Morris' home and reached a blacksmith shop when the appellant came and demanded the mare. Kincade refused said demand, and was proceeding on his journey when he was commanded, at least twice, to halt, which he did, and, when appellant came to where Kincaid was, according to his testimony, appellant drew a pistol on him and took the mare from him against his will and consent, and because of the drawing of the weapon. The appellant then started back in the direction of his home, and, in passing the place where Morris was, he objected to the taking of the mare, but stated he was helpless, and that he would have to resort to the law. The appellant took the mare to his home, and the same morning brought back the mule they had procured from Morris, which he refused to receive. Thereafter Morris died, but it appears that, prior to his death, he had repossessed the mare through legal proceedings, and had sold it to another party.

The wife of Morris testified that she was present when the trade was made, and that the mare was given as part payment, representing fifty. dollars, for the mule; that she was not present when the note for the balance was signed, but heard the trade, and a person who drew up the note for the balance, at the request of Tom Herron, signed his name thereto. There were other witnesses who stated the facts, except as to the ownership of the mare and the exhibiting of the weapon, these wit-

nesses stating that they did not see a pistol, and did not know whether the appellant had a pistol, because the mare was between the witnesses and the defendant.

Tom Herron testified that the appellant authorized him to trade the mare, giving it as security for a fifty dollar cash payment until a loan check which he was expecting from the government should arrive, and that the check had not arrived at the date of the transaction.

The appellant himself testified and admitted that he permitted his father to pledge the mare for the fifty dollar cash payment until the loan check should arrive, and that said check had not arrived when he took the mare from Kincade, and that the debt had not, at that time, been paid. It does not appear, from the evidence, that the debt was afterwards paid. The appellant also testified that he did not exhibit the weapon, and his testimony is in conflict with the state's witnesses, and is also in conflict as to what happened when he first intercepted Kincade and Morris; and the testimony of appellant and his brother, who was a witness for him, did not agree, in important details, as to what took place at that time.

It is first contended that the proof does not correspond with the indictment, and that the indictment does not charge an intent to steal, which is a necessary element in the crime of robbery. In the case of Baygents v. State, 154 Miss. 36, 122 So. 187, 188, it was held that the word " 'rob' or 'robbery' has a well-defined meaning and imports an intent to steal." The indictment in the case at bar charged that the appellant did rob, steal, take, and carry away property. Under this authority, the intent was sufficiently alleged in the indictment.

It is also contended that the judgment must be reversed because the evidence was insufficient, under the law, to sustain a conviction, and that the appellant took the mare under the belief that he had a right so to do, and that the mare was his property.

'We think the evidence was sufficient for the jury to find that the appellant did intend to take the mare with the intent of depriving Morris of his property, knowing the facts which gave Morris the possession of the mare, and the evidence is sufficient to establish that Morris, in fact, owned the mare.

It is true that the appellant and his father both testified that the mare was merely pledged with Morris to secure a fifty dollar cash payment for the mule, but they further admitted that this fifty dollars had not been paid, and that, consequently, Morris still was the rightful owner of the mare, and had, at all events, title of possession and a lien for the purchase price of fifty dollars in cash to be paid for the mule. This was a sufficient title in Morris to sustain the allegations of property in him, and to make out his ownership of the property. If the appellant had the right to the immediate possession, the taking might not constitute robbery, but only trespass, but here he had no right of possession, and knew the facts which gave Morris possession of the property.

In the case of Thomas v. State, 165 Miss. 897, 148 So. 225, it was held that, where the complaining witness killed defendant's dog, and defendant, by using gun, compelled complaining witness to turn over cattle as damages, defendant was guilty of robbery.

In Glenn v. State, 49 Tex. Cr. R. 349, 92 S. W. 806, 13 Ann. Cas. 774, it was held that, under the Texas statute, if any person, by assault or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property, with intent to appropriate the same to his own use, he shall be guilty of the crime of robbery, the fraudulent intent to appropriate the property of another being an essential element of the offense, and if the property, though taken from another forcibly, is the property of the taker, and is believed by him to be such, the taking does not constitute the crime of robbery. On page 776

of 13 Ann. Cas., another Texas case appearing in Fannin v. State, 51 Tex. Cr. R. 41, 100 S. W. 916, 918, 10 L. R. A. (N. S.) 744, 123 Am. St. Rep. 874, is cited, in which the court said: "We are not willing to lay down the proposition that if a man collects a debt by force and threats, and putting in fear, he will not be guilty of robbery. There might be peculiar facts and circumstances which would exonerate him, and which the jury might consider in mitigation of the punishment, but no man has a right, as we understand the law, to take the law in his own hands, and at the point of a six-shooter, putting his debtor in fear of his life or serious bodily injury, collect a debt, however just, and then defend against it, on the ground that the property was not fraudulently taken because appellant owed him the money, and would not pay him. This is more than a simple trespass, and it will be a dangerous doctrine to hold that a man can thus collect his debts. If it was specific property that appellant had a right to, under the circumstances he might use force to get or regain possession of same without being guilty of robbery; and, under the circumstances of this case, where appellant had no right to any specific property, the prosecutor owing him a debt for wages, the amount of which was even controverted, and he simply drew a pistol and made prosecutor pay him what he (appellant) claimed was due, we held that this was not a good defense."

In the case at bar, it is clear that, if the appellant had gone to the premises of Morris, in his absence, and had taken the mare without his knowledge or consent, with intent to deprive Morris of his property rights, appellant would have been guilty of larceny and not mere trespass. The proof here is sufficient to show that Morris was the absolute owner of the mare, and it appears, from the testimony of his wife, that Morris repossessed it through legal proceedings.

But, even if the evidence only established what the

appellant and his father testified to, Morris was still the owner of the mare for the time being, and the appellant had no right to take forcible possession thereof.

The State secured only one instruction, reading as follows: ''The court charges the jury for the State that if you believe, from the evidence in this case, beyond a reasonable doubt, that the defendant did unlawfully and feloniously put Frank Kincade in fear of some immediate injury to his person, and further that he did then and there unlawfully and feloniously rob, take, steal and carry away the horse in question, in the presence and from the person of the said Frank Kincade, as charged in the indictment, then you should find the defendant guilty as charged.''

The appellant secured many instructions, one of which is as follows: ''The court charges the jury for the defendant that intent to steal the property in question is a necessary element of the crime of robbery, and that the State must prove, beyond a reasonable doubt, that the defendant, with intent to steal, did take, steal, rob and carry away the property in question.''

We think the number of instructions secured by the appellant dealing with the offense were sufficient to announce the law applicable to the facts in the case. Appellant complains of the refusal of several instructions, but we think this did not constitute error.

We find no error sufficient to reverse this case, and the judgment of the court below must be affirmed.

Affirmed.