278 So.2d 469 (1973)
Jesse James THOMAS
v.
STATE of Mississippi.
No. 47388.
Supreme Court of Mississippi.
May 29, 1973.
Fielding L. Wright, Jr., George S. Shaddock, Pascagoula, for appellant.
*470 A.F. Summer, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
This case involves a criminal appeal taken from the Circuit Court of Jackson County, Mississippi, wherein the appellant was convicted of armed robbery and sentenced to a term of twenty-five (25) years in the Mississippi State Penitentiary.
In April of 1972, police authorities in Jackson County, Mississippi, had been given a description of an automobile which had allegedly been used in a burglary in the Jackson County area. On April 26, 1972, a vehicle matching the description of the automobile in question as set forth in a John Doe Warrant was spotted outside of a local motel by two police officers. After a short period of surveillance, the police officers observed the appellant and two female companions leave the motel in the suspect automobile. Shortly thereafter, the automobile in question was stopped by the two policemen for questioning of its occupants. Following a conversation dealing with the existence or sufficiency of an arrest warrant, appellant disarmed both officers at gunpoint and ordered them into their police cruiser. Appellant then directed the officers to drive him to a remote wooded area where appellant handcuffed both policemen to a tree. Appellant then drove the patrol car to the police firing range where he surrendered to pursuing law officers.
During the April term of 1972, the Grand Jury returned a true bill indicting appellant and his two female companions on charges of armed robbery. The indictment states:
"* * * That Jesse Thomas, Jo Lynn Jacobs, and Alicia Hutton Freeman ... did unlawfully and feloniously take, steal, and carry away from the person of, or in the presence of Lt. E.R. Fulmer, against the will of said Lt. E.R. Fulmer, one pistol of the value of $125.00 of the personal property of Lt. E.R. Fulmer, and one Pascagoula Police car, of the value of $3,000.00, of the personal property of the City of Pascagoula, and did unlawfully and feloniously take, steal and carry away from the person of, or in the presence of Thomas Huntley, against the will of the said Thomas Huntley, one pistol of the value of $70.00, of the personal property of Thomas Huntley by placing the said Lt. E.R. Fulmer and Thomas Huntley in fear of immediate injury to their persons by exhibiting a pistol, a deadly weapon, against the peace and dignity of the State of Mississippi."
Prior to empaneling the jury, defendant requested a continuance in order that certain records could be secured relating to the defendant's confinement in a Texas mental institution. While this motion was denied, the lower court stated that a motion requesting a psychiatric examination of the accused at Whitfield State Mental Hospital would be granted. However, the defendant declined to offer such a motion.
Following the jury's finding of guilty, defendant filed a motion for a new trial which was overruled. In taking this appeal, appellant has set forth the following points of error, among others, namely:
(1) The lower court erred in not sustaining appellant's motion to quash the indictment.
(2) The lower court erred in not sustaining appellant's motion for a directed verdict, at the close of the State's case and at the close of the entire case.
(3) The lower court erred in granting unto the State, over objection, Instruction No. 1 for the State.
(4) The lower court erred in refusing appellant's requested Instruction No. 9 and Instruction No. 10.
The appellant has limited his argument to a discussion of the propriety of the lower court's granting of State's Instruction No. 1 and the court's refusal to grant defendant's Instructions Nos. 9 and 10.
At the outset it is apparent that the entire case on appeal depends upon whether or not the charge of robbery requires the *471 State to charge and prove what was originally described in Latin as animus furandi or intent to steal as against the Latin phrase animus revertendi or intent to return. We are aided in this study by another Latin word asportatio or asportation, which has come to mean not only an act of moving property from one place to another, but carrying property away with the felonious intent to permanently deprive the owner of his property, in other words, to steal it.
It should be remembered that although robbery and larceny are distinct crimes, nevertheless, in a generic sense, robbery and larceny are but different degrees of larceny. It has been said that robbery is in its final analysis a forcible larceny from the person of another. 52A C.J.S. Larceny § 1(2), at 396 (1968).
The appellant has challenged the form of the indictment in this case, but since the indictment contains the words: "did unlawfully and feloniously take, steal and carry away from the person of, or in the presence of Lt. E.R. Fulmer against the will of Lt. E.R. Fulmer, ... etc.", we hold that the words "unlawfully" and "feloniously" are sufficient to make the necessary charge of "intent to steal". State v. Snowden, 164 Miss. 613, 145 So. 622 (1933); Webster v. State, 146 Miss. 682, 111 So. 749 (1927); Roberts v. State, 55 Miss. 421 (1877). It will be noted, however, that the wording of this indictment was criticized in Jones v. State, 95 Miss. 121, 48 So. 407 (1909).
The appellee contends that the following instruction granted the State was erroneous because it failed to include the required element in a charge for robbery of "intent to steal":
"The court instructs the jury for the State that if you believe from the evidence in this case beyond a reasonable doubt that Jessie Thomas, on the 26th day of April, 1972, did unlawfully and feloniously take, steal and carry away from the person of, or in the presence of Lt. E.R. Fulmer, against the will of the said Lt. E.R. Fulmer, one pistol of the value of $125.00 of the personal property of Lt. E.R. Fulmer, and one Pascagoula Police Car, of the value of $3,000.00, of the personal property of the City of Pascagoula, and did unlawfully and feloniously take, steal and carry away from the person of, or in the presence of Lt. E.R. Fulmer, against the will of the said Lt. E.R. Fulmer, one pistol of the value of $125.00 of the personal property of Lt. E.R. Fulmer, and one Pascagoula Police Car, of the value of $3,000.00, of the personal property of the City of Pascagoula, and did unlawfully and feloniously take, steal and carry away from the person of, or in the presence of Thomas Huntley, against the will of the said Thomas Huntley, one pistol of the value of $70.00, of the personal property of Thomas Huntley by placing the said Lt. E.R. Fulmer and Thomas Huntley in fear of immediate injury to their persons by exhibiting a pistol, a deadly weapon then it is your sworn duty to find the defendant guilty as charged."
A similar instruction was condemned in Jones v. State, 95 Miss. 121, 48 So. 407 (1909), and again in a second Jones case, Jones v. State, 152 Miss. 900, 120 So. 199 (1929). See also McCray v. State, 153 Miss. 587, 121 So. 291 (1929). These instructions, however, did not use the word "steal", but the word "feloniously" was used. Although there is authority to the contrary, we hold the State's instruction was proper.
On the other hand, the word "felonious" may or may not convey to the average juror the meaning that the State is required to prove "intent to permanently deprive the owner of his property."
The State points out, however, that we said in Bell v. State, 259 So.2d 118 (Miss. 1972) that under the provisions of the robbery statute that all the State is required to prove is that the defendants took or attempted to take the personal property of the victim from his presence and against his will by putting him in fear of immediate *472 injury to his person. In the Bell case, however, the question of asportation was fully proven; there the robbers took money away from their victim and converted it to their own use.
This Court has consistently reminded the Bench and Bar that specific intent to steal must be shown by the testimony in robbery cases.
In Cooper v. State, 218 So.2d 874 (Miss. 1969) we said: "Specific intent must be shown under the armed robbery statute. Miss.Code 1942 Ann. § 2367 (1956)." 218 So.2d at 876.
We said in Thomas v. State, 165 Miss. 897, 148 So. 225 (1933) that: "Under the law intent to steal is an indispensable element of robbery... ." 165 Miss. at 902, 148 So. at 225. This is the general rule. See 77 C.J.S. Robbery § 22(a), at 462-463 (1952).
This Court has for many years recognized in larceny cases that where the property of another is taken with intent to return it to the owner, the taking is not with "intent to steal" and is not larceny. Slay v. State, 241 So.2d 362 (Miss. 1970). See also Love v. State, 208 So.2d 755 (Miss. 1968).
The appellant offered two instructions on the issue of intent, as follows:
"The Court instructs the jury for the defendant that under the laws of the State of Mississippi an essential element of the crime here charged is the particular intent of lucre or substantial gain in money or property as the dominant or primary purpose of his action and not one which happens as a mere incident to, or as a collateral development in, some other main and primary motive; that is, if you believe from the evidence in this case that the defendant's primary and dominant purpose in taking the guns and police car in question was for the purpose of resisting an arrest and not for lucre or substantial gain in money or property, then if you so believe it is your sworn duty to return a verdict of not guilty."
and
"The Court instructs the jury for the Defendant, Jesse James Thomas, that if you believe from all of the evidence and testimony offered in this case that the only intent possessed by the defendant was to resist an arrest, whether that arrest was legal or illegal then it is your sworn duty as members of this jury to find this defendant not guilty of armed robbery."
These instructions were refused by the court. The first was not proper as to the "primary motive" and should have been modified to show asportation more clearly. The second instruction was unartfully drawn; however, it should have been granted, since there was no other instruction clearly showing the required element of asportation essential to prove the crime of robbery.
In the case of Sledge v. State, 99 Ga. 684, 26 S.E. 756 (1896), the Court said:
"There can be no robbery without an intent to steal, and hence it is legally impossible for the trial judge to give to the jury correct instructions upon the trial of a robbery case which leaves entirely out of view the question of felonious intent. It is not one of those collateral matters concerning which the court is only required to instruct the jury upon request, but it is of the very substance of the offense, and an omission so to instruct the jury would enable them to convict the accused without finding the felonious intent. * * * It follows, therefore, that the failure of the circuit judge to instruct the jury upon this important branch of the case must result in a new trial." Sledge v. State, 26 S.E. 756 (1896).
Again the Georgia court said in two cases:
"An intent to steal is a substantive element in the commission of the offense of robbery, and the failure so to instruct the jury in this case was error." McGruder v. State, 213 Ga. 259, 98 S.E.2d 564, 567 (1957).

*473 "... [I]t is reversible error for the court to omit an instruction to the jury that, before the defendant can be convicted of the crime of robbery, it must appear that the property was taken with the intent to steal." Nelson v. State, 203 Ga. 330, 46 S.E.2d 488, 493 (1948).
See also Sanford v. State, 217 Ga. 825, 125 S.E.2d 478, 479 (1962); McKuhen v. State, 102 Ga. App. 75, 115 S.E.2d 625, 626 (1960).
And, in State v. Mundy, 265 N.C. 528, 144 S.E.2d 572 (1965), the Supreme Court of North Carolina expressed the following rule with respect to the giving of instructions on intent in robbery cases:
"A taking of personal property with felonious intent is an essential element of the offense of armed robbery, of attempt to commit armed robbery, and of common law robbery. The court must so instruct the jury in every robbery case, and must in some sufficient form explain and define the term "felonious intent.' The extent of the definition required depends upon the evidence in the particular case. State v. Spratt, N.C., 144 S.E.2d 569. In some cases, as where the defense is an alibi or the evidence develops no direct issue or contention that the taking was under a bona fide claim of right or was without any intent to steal, `felonious intent' may be simply defined as an `intent to rob' or `intent to steal.' State v. Spratt, supra. On the other hand, where the evidence raises a direct issue as to the intent and purpose of the taking, a more comprehensive definition is required. State v. Lawrence, 262 N.C. 162, 136 S.E.2d 595; State v. Lunsford, 229 N.C. 229, 49 S.E.2d 410." 144 S.E.2d at 574.
See also Liles v. United States, 129 U.S. App.D.C. 268, 393 F.2d 669 (1967); People v. Seay, 179 Cal. App.2d 362, 3 Cal. Rptr. 769 (1960); Carnes v. People, 171 Colo. 301, 466 P.2d 918 (1970); Southerland v. Commonwealth, 217 Ky. 94, 288 S.W. 1051 (1926).
We think that it was a jury issue as to whether or not the appellant took the property here involved from the policemen for the purpose of permanently depriving the owners of their property or whether or not he took the property with no intention of permanently depriving the owner of its possession. The case, therefore, must be reversed for a new trial in which the issue of intent is submitted to the jury.
We point out that the testimony in the record indicates that the defendant may be, by his own statement, guilty of other crimes, but the testimony as to robbery as such, is rather meager.
Reversed and remanded.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.