317 So.2d 425 (1975)
Freddie Lee WILLIAMS
v.
STATE of Mississippi.
No. 48516.
Supreme Court of Mississippi.
August 4, 1975.
*426 John W. Land, Rosedale, Boyd P. Atkinson, Cleveland, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
BROOM, Justice.
Previously a majority of the Court reversed the decision on appeal here. An opposite result was reached on petition for rehearing, and the prior majority opinion and dissenting opinion are withdrawn.
Armed robbery was the offense for which appellant, Williams, was convicted in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi. After the jury found him guilty, the court sentenced him to a term of three years in the state penitentiary. We affirm.
The thesis of the appellant's defense is that he took the money in question in "good faith" and that the evidence was insufficient to establish his criminal intent.

FACTS
On February 9, 1974, appellant selected and purchased a pair of size 10 1/2 shoes from Jay's Department Store in Cleveland but declined to try them on though invited to do so. He paid $25.15 for the shoes. According to him, he was told by the sales clerk (Coccilova) that if the shoes were not satisfactory or did not fit they could be returned and the matter adjusted. Other testimony indicated that it was the store's policy not to accept for exchange or refund shoes that were "scuffed." Unfortunately the shoes did not fit. Two days later the appellant returned them (worn and scuffed) to the store and asked that they be exchanged for other shoes or that the $25.15 be refunded. A store employee then unsuccessfully attempted to stretch the shoes and the appellant demanded a refund. When the appellant's demand for return of the money was refused, he left but stated that he would return and get his money.
Later that day (February 11th), he returned the shoes in a "scuffed up pretty bad condition", and again demanded a refund but again his demand was unavailing. Appellant then drew a .38 caliber pistol which he pointed at Mr. Reynolds (not the clerk who sold the shoes but the shoe department manager), and demanded $25.15. Appellant told Reynolds, "I ain't joking, man, I want my money back ... don't try anything." He then placed the sales slip (for $25.15) on the counter and told the cash register lady, "I want that much money... ." These facts are admitted but there is some dispute as *427 to whether or not the appellant also said, "this is a take back." At gun point, Mr. Reynolds (having no money on him) directed the cashier to take the money out of the cash register. In that manner the appellant obtained $25.15.

I.
We find no merit in appellant's argument that the court erroneously refused to grant him his instruction No. 11. Other instructions, No. 1 for the state and No. 8 for the defendant, properly advised the jury of the necessity to find "felonious intent" on the part of the defendant as a prerequisite to his conviction. The jury also had before it another instruction (requested by appellant) to the effect that it might find him guilty of the lesser offense of unlawfully pointing and aiming a deadly weapon (a misdemeanor) but the jury rejected that theory of the case.

II.
We cannot accept appellant's argument that his alleged "good faith" taking of a sum of money entitled him to a peremptory instruction. Robbery under Mississippi Code Annotated section 97-3-79 (1972) is established if the proof shows that the defendant took or attempted to take the personal property of another from his presence against his will by violence or by putting him in fear of immediate injury to his person by exhibition of a deadly weapon. Bell v. State, 259 So.2d 118 (Miss. 1972).
The three essential elements of robbery are: felonious intent, force or putting in fear as a means of effectuating the intent, and by that means a taking and carrying away of the property of another from his person or in his presence. Sykes v. State, 291 So.2d 697 (Miss. 1974). According to Sykes, a jury finding that "[T]he particular intent of the accused must be one in which substantial gain in money or property was the dominant or primary purpose ..." (emphasis added) is not a prerequisite to a robbery conviction. Thus it is of no controlling significance that appellant took only a sum equal to that which he paid for the shoes.
In Thomas v. State, 165 Miss. 897, 148 So. 225 (1933), this Court rejected the argument that the collection of unliquidated damages by force was not robbery. A later case, similarly styled, Thomas v. State, 278 So.2d 469 (Miss. 1973) is cited by appellant. In that case a robbery conviction was reversed, but it was because of a deficiency in jury instructions. Our decision there pointed out that the issue to be decided by a properly instructed jury was whether the appellant took the property involved (a pistol and a police car) from the policemen with the intent to steal.
67 Am.Jur.2d Robbery section 61, at 63 (1973), on the matter of intent in a robbery prosecution, states the following rule:
The issue of felonious intent is one of fact, and its determination is therefore within the exclusive province of the jury, under appropriate instructions from the court. Consequently, the jury may find, if the facts justify it, that a defendant's expressed intent to retake money lost in an illegal game, or to collect a debt, was a mere pretext resorted to as a cover for an attempt to steal.
In Herron v. State, 176 Miss. 795, 170 So. 536 (1936), the appellant (charged with robbery) argued that he took a mare under the belief that he had a right to do so, and that the mare was his property. There we said that had the accused taken the mare from the premises of Morris "in his absence" without his knowledge or consent with intent to deprive Morris of his property rights, he would have been guilty of larceny and "not mere trespass." This Court affirmed his conviction of robbery, and held that the issue (intent) was a question for the jury to resolve upon the proof which showed that the mare was taken by appellant at pistol point.
*428 The record before us reveals no evidence that the money which the appellant obtained from the cash register was the identical property or the same cash which he had given for the shoes at the time of the purchase. Neither does it show that what he took at gun point was in fact his own property, or that what he took was not worth more than the value of the shoes at that time. In view of the admitted scuffing damage to the shoes which appellant had worn down the street, his claim was unliquidated because the value of the shoes in their depreciated condition was not fixed or certain.
McDaniel v. State, 16 Miss. (8 Smedes & Marshall) 401 (1847), relied upon by appellant, was a murder case resulting from a dispute about a pony. There is language in McDaniel that "if there be a fair, bonafide claim of property or right in the prisoner, the offense amounts to but a trespass." In the instant case the appellant admitted forcibly taking money to satisfy a claim for money which he may have believed was owed him, but upon the facts and circumstances this falls short of a "fair, bonafide claim" and did not justify his taking the law into his own hands. The following well reasoned cases from other jurisdictions support our holding. State v. Ortiz, 124 N.J.Supr. 189, 305 A.2d 800 (1973); People v. Uselding, 107 Ill. App.2d 305, 247 N.E.2d 35 (1969). Our judgment is that the evidence made out a case sufficient for submission to the jury.
As said in Herron, supra, which with approval quoted from Fanin v. State, 51 Tex.Cr.R. 41, 45, 100 S.W. 916, 918, 10 L.R.A. (N.S.) 744, 748, 123 Am.St.Rep. 874, 879-80 (1907):
"[W]e are not willing to lay down the proposition that if a man collects a debt by force and threats, and putting in fear, he will not be guilty of robbery." (Herron v. State, 176 Miss. at 801, 170 So. at 538.)
The record shows that the appellant brazenly entered the store, cocked his pistol, disturbed the peace, harassed the store employees, aimed the loaded pistol at Reynolds, called him a son-of-a-bitch and in "wild-west" fashion took at gun point money  the property of another. Such violent self-help as a means of obtaining redress for grievances concerning property rights is inimical to order and the appropriate administration of justice. It would be most unjudicious to accept his argument that such a caper was done in good faith without animus furandi, and that, therefore, the case should not have gone to the jury.
The robbery statute, supra, was applied by the grand jury and prosecutors in accordance with our system of jurisprudence. As is often the case, other statutes carrying lesser penalties could have been applied, but that is no reason to hold that the robbery statute was inapplicable when it precisely covers the acts of the appellant. Those charged with prosecutorial duties and responsibilities must be allowed to exercise reasonable discretion in deciding which of applicable statutes will be used as a basis for a criminal prosecution.
The trial of appellant was fair in every respect and the decision must stand.
The case was considered by a conference of the Judges en banc.
Affirmed.
GILLESPIE, C.J., and ROBERTSON, SUGG and WALKER, JJ., concur.
RODGERS, P.J., and PATTERSON, INZER and SMITH, JJ., dissent.
SMITH, Justice (dissenting):
Freddie Lee Williams, a student at Delta State University, was indicated for the crime of armed robbery as defined by Mississippi Code Annotated section 97-3-79 (1972). He was tried upon that charge in *429 the Circuit Court of Bolivar County and convicted. The jury failed to fix his penalty at life imprisonment, however, and he was sentenced to serve three years in the penitentiary.
There is little dispute as to the material facts in the case. Nor is there any contention that the acts of Williams, which gave rise to the indictment, were not unlawful and criminal. A serious question is presented, however, as to whether the evidence was sufficient to support a finding, beyond a reasonable doubt, that Williams acted with larcenous intent on the occasion in question, an intent to steal the property of another being universally held to be an indispensable element of the crime of robbery. Stated differently, was the evidence sufficient to show beyond a reasonable doubt that Williams committed the capital crime of armed robbery, as charged in the indictment, or only that he was guilty of one of the lesser statutory criminal offenses?
The essential facts were these: Williams, a college student, went to Jay's Department Store in Cleveland, for the purpose of purchasing a pair of shoes. He selected a pair, but chose not to try them on, explaining to the clerk that he was wearing "gym" shoes and two pairs of athletic socks at the time.
Williams testified that, notwithstanding this, the clerk told him: "If they don't fit, if they hurt your feet, if they tear up or anything goes wrong with them within a reasonable amount of time, bring them back, we will exchange them, fix them, or give you your money back." The clerk did not dispute this but said he did not know whether he told Williams this or not.
In any event, Williams paid $25.15, the price of the shoes, in cash, and was issued a sales slip which showed his name, that he was a student at "St U.", and the amount of the purchase. Printed on the slip was the following: "All claims and returned goods MUST be accompanied by this bill."
That evening, in his room, Williams tried on the shoes, intending to wear them, started to go down the street, but instead returned and changed shoes because the new pair hurt his feet. The following Monday he returned to Jay's Department Store with the shoes, where another salesman in the shoe department, one Reynolds, waited on him, the man from whom he had bought the shoes having been absent. Williams explained the situation and asked to return the shoes for another pair or for his money back. Reynolds offered to stretch the shoes and Williams left them with him for that purpose. When Williams returned later, after the stretching had been done, the shoes still would not fit. Williams again sought to return the shoes in exchange for another pair or for his money back. The salesman refused, saying the shoes were scuffed up. After considerable argument, Williams sought the store manager and was told that the manager was out. He was directed by another employee of Jay's to see Reynolds again. He did this, and a further refusal by Reynolds to do anything about the matter resulted. He refused either to exchange the shoes or return Williams' money. By this time, it is obvious from the record, some heat had been generated between Reynolds and Williams. Finding that he could get no relief for his problem from anyone at Jay's, Williams left the store and sought out and consulted an attorney about suing Jay's to recover his money. The lawyer declined to take the case, however.
Frustrated at every point, Williams then went back to his room and got a pistol, put it in his pocket, and returned to the store, taking the shoes. He went up to Reynolds, the salesman, and handed him the shoes, saying "here's your shoes, I would like to have my money back." Reynolds again rejected the request to exchange the shoes or refund the money, and a heated conversation ensued, in the course of which Williams, at least, lost his temper and cursed Reynolds. According to a State's witness, there were "25 or 30" people present at the *430 time. The argument continued unabated, with no progress either way until finally Williams turned to leave, telling Reynolds "all right, forget about it, I'll get it back." When Reynolds asked how he would get it back, Williams, who had started to leave, turned around, pointed his pistol at Reynolds' stomach, and said: "Like this."
The upshot was that Reynolds accompanied Williams, at gun point, to the cash register, on which Williams placed his sales slip, and "told the lady" that he wanted "that much money, that's my money." Reynolds told her to give Williams the money and this she did, giving Williams the $25.15, requested, the amount shown on the sales slip, and which was the amount he had paid for the shoes. No attempt was made by Williams at any time to take anything else although, obviously, he could have done so if he had wished. As Williams left the store someone asked what was going on and he replied, "this is a take back." He had at last succeeded in forcing the store to take the shoes back and return the money.
It is a fundamental principle of law in this state and elsewhere, that an intent to steal (commit larceny) is an indispensable element of the crime of robbery.
In Thomas v. State, 278 So.2d 469, 472 (Miss. 1973) the Court said:
This Court has consistently reminded the Bench and Bar that specific intent to steal must be shown by the testimony in robbery cases.
The proof in this case shows beyond question that Williams on a number of occasions over a period of days had sought to return the shoes for exchange or for a refund of his money. There is no real dispute that he had been told when he bought them: "If they don't fit, if they hurt your feet, if they tear up or anything goes wrong with them within a reasonable amount of time, bring them back, we will exchange them, fix them, or give you your money back." There was implicit in this statement permission that Williams might try the shoes for "a reasonable amount of time." When he laid the sales slip on the cash register and asked for "my money back," and no more, he made no attempt to take anything else; the whole affair was open, public and took place as the culmination of a heated quarrel and clearly was the result of anger and frustration on part of a foolish and angry young man who felt that he had been grievously wronged. His actions may have been stupid and criminal, and he may have been in error on a point of law as lawyers (and even judges) sometimes are, but the evidence, rather than establishing an intent to steal the property of Jay's Department Store actually negatives the existence of such an intent on the part of Williams.
For more than 100 years, from time to time, the Mississippi Legislature has enacted statutes dealing with the unlawful use of deadly weapons in cases other than those involving homicide, assault and battery with intent to murder and armed robbery. The acts of Williams in this case seem to fall more clearly within the contemplation of certain of these statutes, examples of which are quoted (in part) below:
97-37-19
If any person, having or carrying any dirk, dirk-knife, sword, sword-cane, or any deadly weapon, or other weapon the carrying of which concealed is prohibited, shall, in the presence of three or more persons, exhibit the same in a rude, angry, or threatening manner, not in necessary self-defense, or shall in any manner unlawfully use the same in any fight or quarrel, the person so offending, upon conviction thereof, shall be fined in a sum not exceeding five hundred dollars or be imprisoned in the county jail not exceeding three months, or both.
(Miss. Code Ann. § 97-37-19 (1972)).
97-3-11

Any person who shall intentionally point or aim any gun, pistol, or firearm *431 at or toward another, except in self-defense or in the lawful discharge of official duty, shall be punished by a fine of not more than five hundred dollars, or imprisonment in the county jail not longer than six months, or both; ...
(This statute was repealed, effective July 1, 1974, with a "saving clause" as to acts committed prior thereto).
(Miss. Code Ann. § 97-3-11 (1972)).
97-3-7
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm; and, upon conviction, he shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.
(Miss. Code Ann. § 97-3-7 (Supp. 1974)).
The above statutes appear to reflect a consistent legislative view that acts, such as committed by Williams in this case, while of a grave criminal character, are misdemeanors and properly punishable as such. On the other hand, armed robbery, the capital offense with which Williams was charged, defined by Mississippi Code Annotated section 97-3-79 (Supp. 1974), clearly contemplates the action of a thief who acts with the deliberate design and intention of stealing the property of another, from his person or presence, by the use of a deadly weapon. At the time of the incident here involved the death penalty was authorized upon conviction of armed robbery. (The amendment of the above statute changed the maximum penalty from death to life imprisonment and was effective April 23, 1974).
The trial court granted an instruction authorizing conviction of Williams under Mississippi Code Annotated section 97-37-19 (1972). The record shows, too, that the district attorney made no objection to the granting of this instruction. It is not necessary, of course, to express any opinion in this dissent as to whether the giving of that instruction was proper under the indictment, although in my view simple assault may be a constituent included offense of armed robbery.
In a number of jurisdictions it has been held that the taking, by force or threats, of what is honestly and reasonably believed by the taker to be reightfully his, cannot be robbery because of the absence of larcenous intent.
There exists a division of opinion among the courts of this country. As to this, however, in People v. Gallegos, 130 Colo. Rptr. 232, 274 P.2d 608 (1954), the Colorado Supreme Court, sitting en banc, dealt with the subject. Gallegos was charged with aggravated robbery and, a jury having been waived, on motion of counsel for Gallegos at the conclusion of his trial, he was found not guilty on the ground that intent to steal had not been established beyond a reasonable doubt. From this action of the trial court The People appealed. The trial court's action was affirmed by the Colorado Court. The opinion of the Court in Gallegos, supra, reflects the following:
The facts are not in serious dispute. Joe Gallegos was a sheepherder employed by one D.A. McPherson at a monthly wage of $180 with a provision that if he would take the herd of sheep onto the forest reserve and stay with them until fall, his wages would be $200 a month. Gallegos later quit his employment and demanded his wages upon the basis of $200 per month, and this led to a dispute with his employer.
Later, and during the same day of the dispute, defendant drew a gun and pointed it at his employer to enforce his demand, and McPherson, being "under force or intimidation," complied. *432 Whereupon, defendant departed. He later was arrested, and, as we have said, charged with aggravated robbery.
Our statute, section 84, chapter 48, '35 C.S.A., provides, inter alia, "Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation." It is undisputed that defendant used a gun in demanding and receiving a check for wages, the payment of which he honestly believed to be due him.
Counsel for defendant does not contend that in thus securing the payment of his wages no crime was committed, nor did the trial court so determine. The only question presented on this review is whether, under the facts, defendant was guilty of aggravated robbery as to which the trial court held him guiltless.
......
We are aware of the fact that there is a divergence of opinion in robbery cases, and in Moyers v. State, 186 Ga. 446, 197 S.E. 846, 847, 116 A.L.R. 981, there is a nicety of distinctions which we are disinclined to adopt in this jurisdiction. However, it is to be noted that in that case is the statement, "If the animus furandi is lacking in the taking, there can be no robbery. So our courts have held the taking of propery under a fair claim of right of title or possession does not constitute robbery." Also it should be observed that in the Georgia case the word "fraudulent" is used in the definition of robbery, and its absence in our jurisdiction is to be noted.
......
It may generally be said that the offense of robbery is but an aggravated form of larceny, and, therefore, the intent to deprive an owner of his property and to convert it to the use and benefit of the accused is an essential element of the offense and must be established beyond a reasonable doubt by competent evidence. In the present case it is undisputed that the intent to steal is absent, and this being a substantive element in the commission of the crime of robbery, its absence precludes a successful prosecution therefor. The following are but a few of the decisions supporting the trial court's action in the instant case: People v. Hughes, 11 Utah 100, 39 P. 492; Butts v. Commonwealth, 145 Va. 800, 133 S.E. 764; Bauer v. State, 45 Ariz. 358, 43 P.2d 203; Johnson v. State, 24 Okl.Cr. 326, 218 P. 179; 46 Am.Jur., p. 145, sec. 13; 77 C.J.S., Robbery, § 22c, page 464; State v. Sawyer, 95 Conn. 34, 110 A. 461, 13 A.L.R. 139; Tipton v. State, 23 Okl.Cr. 86, 212 P. 612, 31 A.L.R. 1074; People v. Rosen, 11 Cal.2d 147, 78 P.2d 727, 116 A.L.R. 991.
(274 P.2d at 609-610).
In State v. Trujillo, 7 Or. App. 236, 489 P.2d 977, (1971), the Court dealt with the following factual situation. Trujillo, an employee of a store, was usually paid his wages on Friday. On the Friday evening preceding the robbery Trujillo was charged with having committed, the store manager informed him and other store employees that their checks would be delayed until Monday. The next day, Saturday, defendant appeared at the store three times, each time asking to speak to the manager about "getting his money." On the first trip, about noon, he argued twenty minutes with the cashier, but left and was told that the manager would be in at 1:00. When he returned at 1:00 the manager had not arrived. Further argument with the cashier ensued. The cashier promised to ask the manager about defendant's money. When the manager returned she left again without taking any action as to Trujillo's wages. On his final return, Trujillo "argued or pleaded" at length with the cashier. It is undisputed that, not having gotten the money due him, Trujillo threatened the cashier with a knife, opened the cash register and, without counting it, took all of the money there was in it, except the coins, stuffed it in his pocket and walked *433 out. At the conclusion of the trial, a motion to dismiss the armed robbery charge and submit the case on a lesser and included offense was denied. The Oregon Court, reviewed the matter and affirmed, stating:
The majority view as stated in an ALR Annotation is that the intent to collect or secure a debt, if under a bona fide belief that the taker is entitled to possession of the property, negates the requisite "animus furandi." The few cases holding contrary are unpersuasive. In adopting the majority view, we note in particular the qualification that the defense is not available when more than is believed due is taken.

(489 P.2d at 979).
The Court then said:
It was established that $17.35 was due defendant from the store. [The cashier] testified that defendant took all of the money in the cash register, with the exception of $6 in coins, and that he did not count it as he took it.
(489 P.2d at 980).
There follows a discussion of the competency of certain evidence relating to the exact amount taken from the cash register by defendant. It appeared, however, that in any event the amount taken was considerably more than the $17.35 due the defendant for wages.
The Court, in affirming the conviction and finding the case not to come within the rule, said:
From the evidence related above we think that a reasonable inference can be drawn from evidence properly before the court that defendant took more than the sum due him, and that he had no intention of limiting himself to such sum as he took the money during the robbery.
(489 P.2d at 980).
This, of course, is the significant distinction between Trujillo and the case now before us.
In People v. Butler, 65 Cal.2d 569, 421 P.2d 703, 55 Cal. Rptr. 511 (1967), the Court said:
Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery. It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent... . [55 Cal. Rptr. at 514, 421 P.2d, at 706].
In the present case it is not suggested that Williams had a right, either legally or morally, to act as he did. On the contrary, Williams' conduct was not only reprehensible in the extreme but constituted a serious criminal offense under applicable Mississippi statutes. On the whole record, however, the intent to steal Jay's property was not established by evidence beyond a reasonable doubt. On the contrary the evidence negates such an intention. In that situation, the crime he committed was not robbery.
Obviously, no hard and fast rule can be enunciated in this area. Every case must be determined with reference to its own peculiar facts but it is foreseeable that cases in which the defense is available will be rare.
No case has been cited, and we have found none, where the circumstances were precisely, or closely approximated, the peculiar facts disclosed by the present record. Unanimity is lacking among the courts of this country as to the availability of the defense in cases where robbery is charged. In some cases holding the defense unavailable, *434 the courts seemed to have proceeded as if defendants would escape all punishment unless the convictions of robbery were affirmed. The rejection of the defense seems to have been, principally, in cases involving unliquidated claims or where the evidence has left a factual question as to the existence of the intent to steal. Also, in some cases, the decision to affirm a conviction of robbery seems to have turned upon a feeling, implicit from the opinion, that since the act of the defendant was unlawful, violent and involved a danger to another, affirmance was justified as a matter of public policy. The fact that the defendant may have been guilty of a different offense, rather than that of armed robbery, for which he might have received appropriate punishment, seems to have received slight consideration in reaching the court's conclusion. The view of the majority in this case seems to be compounded of all of the above factors. Even in those cases where the rule has not been followed, courts have not rejected or criticized the rule that, in order to convict of robbery, the existence of an intent to steal must be established by evidence beyond a reasonable doubt. There seems to be a tendency in some cases to consider that the "claim of right" to property taken, held by a defendant, must be viewed as a precise legal question and restricted to "legally enforceable rights," and this seems to be the view adopted by the majority here. Elsewhere, however, it has been pointed out that "specific intent (to commit larceny) depends upon a state of mind" and not upon a precise and accurate interpretation of the relative legal rights of the parties at the moment.
In Thomas v. State, supra, this Court fully committed itself to the indispensability of proof beyond a reasonable doubt of an intent to steal in order to sustain a conviction of robbery. Thomas, however, presented no question of a claim of ownership or of entitlement on the part of the defendant to the property taken.
It appears that this Court has never before dealt specifically with the precise question now presented.
In Buchanan v. State, 5 So. 617 (Miss. 1889), facts were stated as follows:
The lessor of land to Buchanan, the appellant, sold him two calves with the understanding that the title to the calves be retained by the lessor until same were paid for. Some dispute arose as to the debt due by Buchanan to his lessor. Buchanan nailed up his corncrib, which was broken open by lessor, and the corn appropriated, whereupon, after consultation with an attorney, he openly, and in the day-time, took the two calves, and sold them. Buchanan was then indicted for grand larceny, was convicted, and appealed.
The Court reversed and remanded saying:

Per Curiam. The motion for a new trial should have been sustained. If it be conceded that the calves had ever been delivered to, or were in the possession or custody of, Mrs. Poore, or her agents, Hawkins or Cockrell, it was shown, and not denied or contradicted, that appellant took the calves openly and publicly, in the day, in good faith, under a claim of right and title in himself. The testimony was not sufficient to convict of larceny. The felonious intent necessary to constitue larceny was not proved. 2 Bish.Crim.Law, § 851; McDaniel v. State, 8 Smedes & M. 401; Littlejohn v. State, 59 Miss. 273; Watkins v. State, 60 Miss. 323. (Emphasis added).
(5 So. at 618).
Whether Buchanan was guilty of some other offense such as selling property subject to a lien, was not decided. However, he was not, the Court said, guilty of larceny.
*435 In Thomas v. State, 165 Miss. 897, 148 So. 225 (1933), the facts were as follows: Thomas was indicted for robbing at gun point one Minyard of a cow and yearling. The prelude to the robbery involved the ownership by Thomas of a "suck-egg" dog which had been going upon Minyard's premises destroying eggs laid by his hens. Minyard shot the dog and killed it. When Thomas learned of this, he armed himself with a shotgun, confronted Minyard and ordered him to throw up his hands. In that position Minyard was searched by Thomas' sons. Thomas ordered Minyard to pay him $20 or turn over to him a cow and yearling as damages for the killing of the dog. Unable to pay the $20 Minyard turned over to Thomas a cow and yearling which Thomas drove away to his home. Thomas was convicted of robbery and appealed.
The defense interposed was that of a failure to prove an intent on the part of Thomas to steal. This Court rejected Thomas' contention and affirmed the conviction, saying:
It has been held that the rule that the taking under a claimed right is not robbery should not be extended so as to protect one who by force or intimidation collects unliquidated damages. The Supreme Court of Oklahoma in the Tipton Case, in discussing this question, used this language, in a prosecution for robbery, "where the taking of the property is for the purpose of forcibly collecting uncertain unliquidated damages as compensation for an alleged felonious assault on the taker's wife, such forcible taking may constitute robbery and does not come within the rule that the forcible taking and rentention of the property of another for the purpose of paying or securing the payment of a debt might not be deemed robbery."
We are not called upon to decide in this case whether or not the collection by force or intimidation of a liquidated debt honestly believed to be due constitutes robbery, for a debt of that character is not involved. Here, if appellant had any claim at all against Minyard it was for unliquidated damages for the killing of his dog.
(165 Miss. at 903-904, 148 So. at 226).
The trial court should have sustained the motion made at the conclusion of the evidence that the jury be instructed peremptorily to return a verdict of not guilty of the charge of armed robbery.
Therefore, the conviction of armed robbery should have been reversed and Williams discharged upon that charge as laid in the indictment, to be held under the same appearance bond under which he had been at liberty during the present appeal, to await the action of the next grand jury of Bolivar County.
RODGERS, P.J., and PATTERSON and INZER, JJ., join in this dissent.