860 So.2d 855 (2003)
Steven Paul PIERCE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00862-COA.
Court of Appeals of Mississippi.
December 9, 2003.
*858 William Joseph Barnett, Jackson, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and IRVING, JJ.
IRVING, J., for the Court.
¶ 1. A Lowndes County jury found Steven Paul Pierce guilty of two counts of armed robbery. After the trial, Pierce filed a motion for a new trial. He later filed a motion for a JNOV and an amended motion for a new trial. These motions were denied, and Pierce has perfected this appeal wherein he alleges that the evidence is lacking in both sufficiency and weight to support the jury's verdict. He also argues that he received ineffective assistance of trial counsel.
¶ 2. Finding no reversible error, this Court affirms the jury's verdict and the judgment of the trial court.

FACTS
¶ 3. Pierce owned and operated a bar in Lowndes County, Mississippi. Inside the bar were gambling poker machines for his patrons' entertainment. Terry Myatt, Robert Flint and Dan Atkins went to Pierce's bar one night for the purpose of playing pool and the poker machines. In order to play the poker machines, it was necessary for a patron to insert money into the machine which would register a certain amount of credits. The patron could then use the credits to play the machine. The object of the game was to accumulate credits. A patron, after accumulating as many credits as he could, would then proceed to the bar and cash out his credits for money.
¶ 4. Myatt, Flint and Atkins all played the poker machines when they first entered the bar. Flint later stopped gambling on the poker machines and played *859 pool. After playing on the poker machines for a while, Atkins wanted to cash out his credits and informed Pierce of such. Within minutes after Atkins requested a cash out of his credits, Pierce told Myatt to cash out his credits as well. Myatt complied with Pierce's request. Myatt then sat next to Atkins, and both waited to be paid their winnings.
¶ 5. Myatt testified that while they were waiting, Pierce came from behind the bar's counter with an aluminum baseball bat. Pierce approached Flint with the bat and demanded that Flint give him the cards or the fake/laminated money which he believed Flint used on the poker machines. Pierce claimed that all of the men were using laminated money to get more credits on the poker machine.[1] Flint denied any knowledge or possession of any such device. Pierce began poking Flint in the stomach with the bat. Pierce then chased Flint around the pool table and swung the bat toward Flint. Then, Pierce walked towards Myatt and Atkins and accused them of robbing the poker machines as well. Pierce informed the men that he had videotaped them the previous night and accused them of robbing the poker machine of $400 the previous night. Myatt denied any knowledge of having laminated money. Pierce then punched Myatt in his face and struck Myatt's body with the bat. Atkins then told Pierce that he had some information about the laminated money. Atkins and Pierce, with his bat, went outside to discuss the matter.
¶ 6. The next sequence of events is not entirely clear from the record. However, what is clear is that when Pierce reentered the bar, Atkins was not with him. Still holding the bat, Pierce made Myatt and Flint take off their clothing in any effort to find the laminated money. Pierce did not find any laminated money on Flint and, after taking $400 from him, allowed him to leave the bar. Myatt did have laminated money on him. Myatt gave Pierce the laminated money and $220. When Myatt prepared to leave the bar, Pierce came from behind the bar with a gun and pointed it toward Myatt's head. Additional, pertinent facts will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Sufficiency and Weight of the Evidence
¶ 7. Pierce alleges in his statement of the issues that his motions for a JNOV and for a new trial were improperly denied. However, in his brief, his only assertion is that the State failed to prove that he possessed the specific intent to rob the victims. He argues that the evidence supports only the conclusion that he attempted to get from the victims the laminated strip or card that was being used to defraud and steal from him, that there was a complete lack of evidence tending to show that he specifically intended to rob the victims.
¶ 8. In considering Pierce's challenge to the sufficiency of the evidence, we are required to consider the evidence in the light most favorable to the State, and all credible evidence consistent with Pierce's guilt must be accepted as true. McRee v. State, 732 So.2d 246, 249(¶ 9) (Miss.1999). We must review all of the evidence in the light most consistent with the jury's verdict. *860 Smith v. State, 802 So.2d 82, 85(¶ 10) (Miss.2001). "If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable persons could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required." Mangum v. State, 762 So.2d 337, 341-42(¶ 11) (Miss. 2000).
¶ 9. We agree with Pierce that specific intent to steal must be shown by testimony in robbery cases. Thomas v. State, 278 So.2d 469, 472 (Miss.1973); see also Cooper v. State, 218 So.2d 874 (Miss. 1969). The Mississippi Supreme Court has held that "[w]here a crime consists of an act, combined with a specific intent ... mere general malice or criminal intent is insufficient, and the requisite, specific intent must be shown as a matter of fact, either by direct or circumstantial evidence." Hydrick v. State, 246 Miss. 448, 452, 150 So.2d 423, 425 (1963).
¶ 10. Based on the evidence which we have already discussed in the earlier portion of this opinion, we have no difficulty concluding that the State presented sufficient evidence from which the jury could find that Pierce possessed the requisite intent to rob his victims of their money as well as take by force the laminated money strip.
¶ 11. The testimony presented by Myatt and Flint provides direct evidence of Pierce's specific intent to rob the men who he alleged were defrauding his poker machines. Pierce made Myatt and Flint disrobe and empty their pockets. Pierce took the money that was inside the men's pockets. Furthermore, Allen Redden, a co-owner of some of the poker machines, attested that he saw Pierce command the men to empty their pockets because he wanted their money.
¶ 12. Redden testified that Pierce called him over to the bar on the night in question and asked him to count the money in the poker machines to determine if he was correct in his suspicions that the poker machines were being defrauded. Pierce told Redden that the poker machines were $400 short on the previous night. Redden attested that after he counted the poker machines, he found they were $270 short.
¶ 13. Despite this shortage, there was no evidence presented at the trial that Flint and Myatt were the culprits on the night in question or the previous night. Although Myatt was found with the laminated money strip, he was never paid for the credits he earned on the night in question. In fact, Myatt gave Pierce $220. There was no evidence presented that this $220 had been paid by Pierce to Myatt for credits which Myatt had accumulated on the poker machines at some earlier time. The evidence is, that while Myatt waited with Atkins to be paid, Pierce came from behind the bar with a baseball bat, attacked Flint, and a short while later, attacked Myatt. It also is undisputed that Pierce, through these acts of intimidation, made Flint and Myatt empty their pockets of $620 which he then put into his own pockets. We find this issue to be totally devoid of merit.
¶ 14. We turn now to Pierce's contention that the evidence lacked sufficient weight to support the verdict. As distinguished from a JNOV, a motion for a new trial asks this Court to vacate the judgment on grounds related to the weight of the evidence undergirding the verdict. The appellate standard of review for claims that a conviction is against the overwhelming weight of the evidence is as follows:
[This court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion *861 in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an "unconscionable injustice."
Smith, 802 So.2d at 85-86(¶ 11) (citing Crawford v. State, 754 So.2d 1211, 1222(¶ 30) (Miss.2000)). Matters regarding the weight and credibility of the evidence are to be resolved by the jury. McRee, 732 So.2d at 249(¶ 9).
¶ 15. In his argument in support of his weight-of-evidence claim, Pierce does not discuss or analyze the evidence to show how it is so lacking that permitting the verdict to rest on it will sanction an unconscionable injustice. Instead of discussing the evidence, Pierce argues that the trial court's denial of his motion in limine and refusal to admit, for impeachment purposes, a transcript of a pretrial hearing entitles him to a new trial. We will discuss these in turn.
¶ 16. Pierce's motion in limine sought to prohibit the State from adducing evidence regarding the pistol incident which we discussed during our recitation of the facts. Pierce explains that the trial court erred when it, citing Neal v. State, 451 So.2d 743 (1984), found that his pointing the pistol at Myatt's head was a part of a single transaction or occurrence or a closely related series of transactions or occurrences and was admissible to show intent, as well as to allow the State to present the whole picture or the whole story of what transpired. Pierce propounds that the gun was irrelevant to his armed robbery charges.
¶ 17. Matters regarding "[r]elevancy and admissibility of evidence are largely within the discretion of the trial court, and [an appellate] Court will reverse only where that discretion has been abused." Underwood v. State, 708 So.2d 18, 31(¶ 41) (Miss.1998) (quoting Hentz v. State, 542 So.2d 914, 917 (Miss.1989)).
Evidence of prior offenses committed by a defendant, not resulting in a conviction, is generally inadmissible either for impeachment purposes or as a part of the State's case in chief. On the other hand, our law recognizes certain exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences .... and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. Evidence of other crimes or bad acts is also admissible in order to tell the complete story so as not to confuse the jury.

Id. at 32(¶ 41) (emphasis added).
¶ 18. The testimony in this case regarding Pierce's brandishing a pistol was not used by the State to prove his character or that he acted in conformity therewith. The trial court found that the testimony completely told the story of Pierce's armed robbery of Flint and Myatt. We cannot say the trial court abused its discretion with such a finding.
¶ 19. The next argument Pierce raises under this issue is another allegation of evidentiary error. Pierce argues that the trial court erred by not admitting a transcript of the pretrial hearing which was offered to impeach Flint's credibility. Pierce claims that the transcript did not become available until the morning of Flint's testimony. When Pierce attempted to impeach Flint with the transcript, the State objected on the grounds that it was a *862 discovery violation. After the State had an opportunity to view the transcript, the State further objected on authenticity and foundational grounds. Pierce then withdrew his offer of the transcript into evidence. Since Pierce abandoned his attempt to get the transcript into evidence, he waived his right to complain about its non-admission.
¶ 20. In his last contention under this issue, Pierce claims that the jury was tainted due to a juror's failure to disclose an alleged past negative incident with him. Additionally, Pierce explains that two jurors provided untruthful information and failed to disclose material information during voir dire.
¶ 21. The first juror that Pierce complains about is juror Deloris Brooks. He contends that Brooks failed to disclose material information. He insists that Ms. Brooks never spoke of her knowledge of Pierce's check cashing business or even knowing Pierce. However, a review of the voir dire presents a different picture. The State asked the venire members, "is there any of ya'll here who have ... used any of [Pierce's] businesses? ... I think its called Easy Check Cashing." In response to the question, Ms. Brooks raised her hand. She indicated that she had indeed used the business but that she had never met Pierce. When asked if knowing of Pierce's ownership of the check cashing business would affect her in the case, Ms. Brooks responded that it would not.
¶ 22. Pierce also claims that juror Carolina Del Pilar Davis lied during voir dire about having been inside one of Pierce's businesses. Brenda Thomas, Pierce's sister and co-owner of Military Shell, testified at the hearing on the motion for new trial. Thomas avowed that during Pierce's trial she informed Pierce's trial attorney that Davis had been inside Military Shell playing gambling machines and smoking marihuana. Thomas further testified that Pierce and Ms. Davis had an altercation when Pierce asked Davis to leave the establishment and that she informed Pierce's attorney of this fact as well. Davis was called to testify at the hearing on the motion for a new trial and she essentially denied any allegations of prior knowledge of Pierce, altercations with Pierce, or use of Pierce's businesses.
¶ 23. The trial judge found Thomas's testimony to be incredulous. Additionally, the trial judge found Davis's testimony to be credible. We find no reason to overturn the trial judge's finding regarding the credibility of Davis's testimony vis-a-vis Thomas's. Therefore, we find no merit to Pierce's assertion that juror Brooks failed to disclose material information and that juror Davis gave false information during voir dire.

2. Ineffective Assistance of Counsel
¶ 24. Pierce next contends that his trial counsel was ineffective. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To successfully claim ineffective assistance of counsel, Pierce must meet the two-pronged test set forth in Strickland and adopted by the Mississippi Supreme Court. Stringer v. State, 454 So.2d 468, 476 (Miss.1984). Under the Strickland test, Pierce must prove that (1) his attorney's performance was defective and (2) such deficiency deprived him of a fair trial. Id. at 477. Such alleged deficiencies must be presented with "specificity and detail" in a non-conclusory fashion. Perkins v. State, 487 So.2d 791, 793 (Miss. 1986). "The deficiency and any prejudicial *863 effect are assessed by looking at the totality of circumstances." Hiter v. State, 660 So.2d 961, 965 (Miss.1995). This review is highly deferential to the attorney and there is a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. Id.
¶ 25. Pierce must show that there is a reasonable probability that but for his trial attorney's errors, he would have received a different result in the trial court. Stringer v. State, 627 So.2d 326, 329 (Miss.1993). With respect to the overall performance of the attorney, "counsel's failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." Cole v. State, 666 So.2d 767, 777 (Miss.1995). In order to find for Pierce on the issue of ineffective assistance of counsel, this Court will have to conclude that his trial attorney's performance as a whole fell below the standard of reasonableness and that the mistakes made were serious enough to erode confidence in the outcome of the trial below. Coleman v. State, 749 So.2d 1003, 1012(¶ 27) (Miss. 1999).
¶ 26. Pierce points out that his trial attorney should have requested a continuance for the potential discovery violation. Pierce also argues that his trial attorney did not inform the court in a timely manner that two jurors did not truthfully answer questions during voir dire. Lastly, Pierce insists his trial attorney was ineffective because he did not request a jury instruction for a lesser-included offense for the jury's consideration.
¶ 27. For several reasons, we find that Pierce has failed to meet either prong of the Strickland test. We discuss each of Pierce's contentions in turn.
¶ 28. First, the evidence does not support a finding that a discovery violation occurred, notwithstanding the fact that the prosecution initially objected on that basis and that the trial court appears to have accepted the discovery-based objection as valid. Rule 9.04 of the Uniform Circuit and County Court Rules requires reciprocal discovery from the defendant of statements made by witnesses the defendant may offer at trial during his case in chief. The transcript which the trial court disallowed was purportedly a transcript of testimony that witness Flint gave during a preliminary hearing. Flint was not offered as a witness by the defense. Therefore, Pierce's trial counsel was under no obligation to tender a copy of the transcript of Flint's preliminary hearing testimony to the State.
¶ 29. Second, as we have already discussed, the record does not support Pierce's allegation that jurors Brooks and Davis withheld material information or gave false information during voir dire. It necessarily follows that counsel cannot be faulted for not bringing the jurors' lack of candor to the attention of the trial judge if the jurors, in the first place, had not been dishonest or evasive in their answers to unambiguous questions asked during voir dire.
¶ 30. Third, Pierce's contention that his trial attorney erred by not offering a jury instruction on simple assault is also without merit. "[T]he evidence in a particular case generally warrants granting a lesser offense instruction if a rational or a reasonable jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser-included offense." Mackbee v. State, 575 So.2d 16, 23 (Miss. 1990).
*864 ¶ 31. "A lesser-included-offense instruction can be given only if there is an evidentiary basis for it, and such an instruction cannot be given on the basis of speculation." Reddix v. State, 731 So.2d 591, 594(¶ 15) (Miss.1999). In the case sub judice, the record offers no evidentiary basis to suggest Pierce committed simple assault.[2] Since the evidence did not support a lesser offense or lesser-includedoffense instruction, Pierce cannot show that he was prejudiced because of his trial counsel's failure to offer such an instruction.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND SENTENCE OF TWO FIFTEEN-YEAR CONCURRENT TERMS OF IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED ON EACH COUNT, AND PAYMENT OF A FINE OF $5,000 AND RESTITUTION OF $220 IN COUNT I, AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $400 IN COUNT II IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The laminated money is also known as a money strip. A money strip is a laminated twenty dollar bill that allows a player to accumulate credits without putting money into the poker machine. A player inserts the money strip into the poker machine and then pulls it out, but the credits which are registered on the machine as a result of the insertion of the laminated bill remain on the machine after the laminated bill is removed.
[2] The relevant portion of Section 97-3-7 states, "A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm...." Miss.Code Ann. § 97-3-7(1) (Supp.2003).