## THE STATE v. CARROLL, Appellant.

### Division Two, February 26, 1901.

Robbery: SERVANT ACTING UNDER DIRECTIONS: ABSENCE OF FELONIOUS INTENT. Where defendant, a porter in a saloon, was directed by the barkeeper "to fetch a customer back to pay for drinks," but instead of that he and another  stealthily approached and seized the customer, forcibly taking from his pocket more than the amount claimed to be due, and thereafter tried to escape from the police officer who witnessed the act, and who denied that defendant had then made any explanation thereof, a conviction for robbery will not be disturbed on the ground that felonious intent was lacking.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

AFFIRMED.

*Jennings & Kimbrell* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

The instructions asked for can find no support in any of the decisions of this court. It matters not what defendant intended to do with the money. That question does not enter into the controversy and constitutes no part of the crime. It is not an element of the crime.

SHERWOOD, P. J.—The petit jury of Jackson county concurred with the grand jury of that county by finding de-

fendant guilty of robbery in the first degree, and assessing his punishment at nine years in the penitentiary. .

The evidence fully supports the verdict, and the instructions are such as have frequently received the approval of this court.

An instruction was asked by, and refused defendant, which in effect told the jury that they should not find defendant guilty if "he intended to turn the money over to the bartender of the White Rock saloon, to whom he believed that a debt was due from Sheehy."

The bartender's name was Chas. Moran (a brother of Thomas Moran, co-indicted with defendant) and defendant was a porter under him.

Moran states that Sheehy came to the saloon the night of the robbery, and stayed an hour or so drinking and shaking dice for the drinks until his bill was 50 or 60 cents, when the bartender, as he says, demanded the amount, but Sheehy refused to pay, when he ordered him to get out, but when he got out the bartender said: "Go and get old man Sheehy, he owes me 60 cents." Defendant, testifying in his own behalf, says that the words used by the bartender about Sheehy, were: "Go and fetch him back to pay for those drinks." That, thereupon, defendant went out into the street and overtook Sheehy, and asked him to come back and pay for them, and he says, "Damn you and the bartender," and "I grabbed hold of his arm and started to take the money out of his pocket, and the officer says, 'What is the matter?' and I says, 'He owes for the drinks,' and then he talked to Sheehy and asked him what was the matter, and he took him off to one side, and came back and says, 'I will have to put you under arrest,' I released him when the officer told me to, but Moran was not there at all. I scuffled with him because he

owed for the drinks. I was employed there as porter. I was there to fetch him back."

Defendant was positively identified by Sheehy as one of the men who robbed him of about $2 and defendant admits that he was there and had started to take the money out of Sheehy's pocket.

And officer, William Murphy, identifies defendant as one of the men who assaulted and robbed Sheehy, and Moran as the other. After stating that he was standing in the vicinity of the White Rock saloon, and while there saw Sheehy going down south: "Then I next saw this man Carroll come out of the White Rock saloon at Sixth and Broadway, on the southeast corner. He first looked south, then north, and he stepped to the corner of the saloon and looked east, and as he got to the corner, this man Moran met him and he pointed south, and as he pointed south he turned his collar up over his neck. He pointed south towards this man Sheehy, and then they started on tip-toes and ran until they caught up with Sheehy and caught hold of him. Moran grabbed hold of Sheehy by the neck and slung him back and grabbed hold of his wrist. This man Carroll put his right hand into his right-hand pocket, and I ran up and put him under arrest. Carroll let loose and Moran had him by the throat, and I had quite a time to make him break loose. I placed them under arrest, and Moran said to Carroll, 'You keep still. You know nothing at all.' In coming down the street, when we got to the alley between Delaware and Wyandotte, Moran broke loose from me first, and ran south, and Carroll broke loose and ran north, and I shot him in the foot in the alley. We then sent him to the station in the wagon."

There was testimony, also, that defendant, as to all the constituent elements that go to make up good reputation, was hopelessly in the vocative.

Murphy, when recalled, also contradicts defendant as to

several things which occurred when the crime was committed; he says: "I have known the defendant here and Moran, who is jointly indicted with him, for four or five years. Moran was with the defendant that night. Defendant never said anything about explaining to me at that time that he was simply trying to collect the money for the drinks when he had hold of Mr. Sheehy. He did not tell me that this man owed him for drinks."

There are cases where a creditor who collects by force from his debtor a debt due from the latter to him, has been adjudged not guilty of robbery because the felonious intent was lacking. [Reg. v. Hemmings, 4 Foster & F. 50.] The same rule holds in robbery as in larceny, that a taking under an honest claim of right, no matter what circumstances of violence may occur, lacks one of the elements necessary to make the offense robbery. [2 Bishop, N. C. Law, sec. 1162a; Ib., sec. 849; People v. Vice, 21 Cal. 344; Brown v. State, 28 Ark. 126.]

And it is said that the same principle prevails where the taking occurs by one who acts as agent on behalf of another, believed by the former to be the owner. [Herber v. State, 7 Tex. 69; Chambers v. State, 62 Miss. 108.]

But this doctrine has no application where there is no honest belief of ownership or agency, but where a dishonest pretense is resorted to in the endeavor to escape punishment. [2 Bishop, N. C. Law, sec. 851; State v. Hunt, 45 Iowa 673.]

Here it is quite evident that defendant was not acting in good faith. He was directed, as he says, to fetch Sheehy back "to pay for those drinks," but instead of that, he seized him, and took, not the 60 cents which it is said Sheehy owed, but about $2. In this he did something he was not ordered to do, and collected about $1.40 more than was due. Besides that he tried to escape from the officer and was only recaptured after being shot.

On these grounds, judgment affirmed.     All concur.