SHAD FANNIN v. THE STATE.

No. 3882.  Decided February 20, 1907.

**1.—Robbery—Variance—Allegation and Proof.**

Upon a trial for robbery where the indictment alleged that defendant took from the prosecutor one ten dollar bill, and the evidence showed that he compelled the prosecutor to deliver up the ten dollar bill and gave him back $8; and that the prosecutor threw the bill on the floor and defendant compelled another to pick it up and get the change, there was no variance.

**2.—Same—Moral Turpitude—Former Conviction—Evidence.**

Upon trial for robbery it was inadmissible, as original testimony against the defendant of moral turpitude, to permit a witness to state that defendant told him that he had been previously charged and convicted of burglary.

**3.—Same—Charge of Court—Taking Money by Force in Payment of Debt.**

Where upon trial for robbery the evidence showed that the defendant had no right to any specific property of the prosecutor; that the latter owed him a debt for wages, the amount of which was even controverted, and defendant simply drew a pistol and made the prosecutor pay him what defendant claimed was due, the court correctly charged that defendant did not have the right to extort from prosecutor money in payment of a debt, by violence, etc.

**4.—Same—Charge of Court—Assault.**

Where upon trial for robbery there was evidence that prosecutor assaulted defendant with a stick, whereupon the latter drew his pistol in self-defense, and not to coerce him to give up his money, the court should have charged on this phase of the case.

Appeal from the Criminal District Court of Harris.  Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at five years confinement in the penitentiary; hence this appeal.

Appellant contends that there was a variance between the proof and the allegations in the indictment.  The allegation in the indictment is to the effect that appellant took from the prosecutor one ten dollar bill.  The proof on this point shows that he leveled a pistol on prosecutor and demanded of him to pay him what he owed him, which he claimed was for a week's work, $8.  Prosecutor pulled out a ten dollar bill, and appellant told him to throw it down, which prosecutor did, and appellant then commanded another negro, who was present, to go and get that changed and bring him back the change.  The other negro brought him back the change, and he paid appellant $8, giving the other $2 to prosecutor.  This proof shows that while he only

claimed $8, he compelled the prosecutor to deliver up a ten dollar bill, which is according to the allegation of the indictment. If this is robbery, the fact that he gave him back $8 out of the ten dollar bill which he took from him would make no difference. There would be no variance. Appellant also claims there is a variance in that the money was not taken directly by appellant, but the prosecutor threw the bill on the floor and appellant compelled another negro to take it and go get the change. There was no varaince as to this matter, and the court properly instructed the jury that a taking in that way would be a taking by appellant.

During the trial while the witness McFarlane for the State was on the stand, he was asked to state if the defendant did not state to him that he had been convicted of a crime and sent to the penitentiary, to which he answered, "Yes." This was objected to by counsel for defendant on the ground that defendant was not on trial for any other offense than that charged in this indictment; that if the testimony is admissible at all, the records of conviction are the best evidence; because irrelevant and immaterial. The court overruled this objection and the witness further stated, "Yes, sir; he told me that he had been in the penitentiary twice for burglary. He told me at the time where he went from, and who was the officer who arrested him, but I don't remember the place nor who was the officer that arrested him." The question of impeachment of a witness by showing that he had been charged with a crime or been guilty of some criminal offense has been before this court a number of times. See Carroll v. State, 32 Texas Crim. Rep., 431, and Brittain v. State, 36 Texas Crim. Rep., 406. A witness can be impeached by showing that he has previously been guilty of some felony, or charged in a legal way with some felony or some misdemeanor importing moral turpitude. In the Brittain case it was said that the authorities seemed to indicate that this character of testimony can only be resorted to in the cross-examination of the witness, and that in such case the party will be bound by the answer of the witness and could not contradict him, and such appears to be the rule laid down in that case; but in Tony Lee v. State, 45 Texas Crim. Rep., 51, the rule above stated appears to be over-turned. It was there held admissible that a witness could be impeached by the indictments against him. From the latter view the writer of this opinion dissented. In the present case we are asked to go beyond any rule heretofore laid down by this court, and to hold that as original testimony against the defendant, it can be proved by a witness that he told such witness that he had been previously charged with crime. This character of testimony is not admissible under any authority of which we are advised, and we do not feel authorized to extend the rule any farther.

The court gave the following charge to the jury: "If the said W. T. Smith was indebted to the defendant he would not have the right to extort money in payment thereof by assault, violence and by putting

the said W. T. Smith in fear of life or bodily injury." This was objected to on the ground that it does not state the law, but that the contrary is the law, to wit: It is insisted that if the prosecutor Smith was justly indebted to appellant in the amount of money taken from him, that it would not be robbery for appellant to constrain him to pay it by force and violence; that it would not be depriving the prosecutor of his property. On this subject we are referred to a number of cases, both in this State and out of it. See Smith v. State, 11 Texas Ct. Rep., 1023; Bollen v. State, 13 Texas Ct. Rep., 148, and Glenn v. State, 15 Texas Ct. Rep., 878. In the Smith case, supra, the parties were shooting craps, and a five dollar bill was up as the stake. The prosecutor claimed that the dice were cocked, and another throw was made. The prosecutor lost, and appellant went to get the money, and prosecutor started to pull his gun, and appellant drew his first and took the bill. A charge was asked in favor of appellant presenting this view of the case for acquittal, which was refused. This was held error. As we understand it the court decided that appellant, according to his testimony, having a right to the bill, and having procured possession of it, after the manner stated, that it would not constitute robbery. In Bollen's case, supra, it was simply held that the court should have instructed the jury that the property must have been taken fraudulently before there could be robbery. In the Glenn case, supra, the following was the state of facts: Appellant and prosecutor slept in the same room; appellant claimed the next morning that prosecutor had stolen $1.25 from him; that he saw appellant put his hand in his pocket, and his money was gone, and, under these circumstances, he, by force, compelled appellant to hand him over the money, which he claimed he had stolen from him. It was held on that state of facts that there was no robbery. In these cases, however, it seems that there was a claim to the specific property and not a mere debt as is presented here. In the 24 Amer. & Eng. Ency. of Law, 2nd ed., 1004, we find it to be stated that, "As it is essential, to constitute robbery, that the thing taken must belong to another than the taker, it follows that though the property is taken from another forcibly or by putting in fear, this is not robbery, whatever else it may be, if the taker at the time has a bona fide belief that the thing taken is his own." Under this proposition a number of authorities are cited, including cases from various States, as well as English common law cases. These cases appear to turn on the right to claim the specific property and to recover it by violence, but it is further stated in the text that it is not robbery by violence to take money or other property in payment of a debt, unless more is taken than is due. Under this we find the following cited cases: Reg. v. Coghlan, 4 F. & F., 316; Reg. v. Hemmings, 4 F. & F., 50; Crawford v. State, 90 Ga., 701, 35 Am. St. Rep., 242; State v. Hollyway, 41 Iowa, 200, 20 Am. Rep., 586; State v. Brown, 104 Mo., 365, and State v. Carroll, 160 Mo., 368. This last case appears to make it

robbery to take more than is justly due. In the Georgia case Crawford was tried for murder. The facts show that he and deceased had an altercation, deceased claiming that appellant owed him 25 cents, which appellant admitted but stated that he did not have it with him, but as soon as he got home he would pay him. Deceased in the meantime was taking a piece of meat belonging to appellant; appellant told him to desist and on appellant interfering prosecutor cut at him several times with a knife while he continued taking the meat. Under these circumstances appellant killed deceased. The Georgia court appears to hold that it might be a good defense against robbery if the party was taking property in order to collect a debt. It was further suggested that deceased did not seem to desire payment of the debt but insisted on taking the meat wrongfully. In Hollyway's case the Iowa Supreme Court holds to the doctrine that a person can collect a debt by force, and that this will not constitute robbery, and in such case there is no fraudulent intent to deprive the owner of his property. There were peculiar circumstances connected with that case. Hollyway, the defendant, it seems, was a poor man and owed a small debt to the prosecutor Hamilton, who had a store in the neighborhood. On the day of the alleged robbery, Hollyway, appellant, came to Hamilton's store to collect some money; the latter had a small store account, which appellant agreed might be deducted from the amount which he (Hamilton) owed him for some calves sold to him by defendant. When they went to settle Hamilton produced in addition to his account a note which he had bought against defendant and which, with his account, over-balanced the appellant Hollyway's account. Hollyway refused to receive the note and demanded payment of the balance of his claim after deducting the store account, and threatened Hamilton with violence if he did not pay such balance. Under these threats Hamilton paid the defendant $10.60, being the balance due him for the calves after deducting his store account. This was the State's case. Against this, "appellant proposed to prove that the day prior to the alleged robbery Hamilton had gone to the residence of the defendant for the purpose of purchasing of him some calves; that defendant told Hamilton that his (defendant's) family had been sick for a long time, that he was poor, and his family were out of groceries and provisions and in need of medicines, none of which he could buy without money; that he had nothing else out of which he could make the money, and was therefore compelled to sell the calves, otherwise he would not sell them at all; that they agreed upon the price. Hamilton paying $5 down and agreeing that the defendant should come to town the next morning and he (Hamilton) would pay him the balance, after deducting a small account held by Hamilton against defendant, in money; that the defendant agreed to this and delivered the calves to Hamilton, who took them home with him. The defendant further proposed to prove that Hamilton had purchased the note on defendant after he had bought and agreed

to pay for the calves in cash. All of this evidence the court rejected, and also ruled from the jury all the evidence before given in regard to the note. The defendant also proposed to prove that the money received from Hamilton was applied in payment of his claim for the calves sold. This was also rejected." The court says "In robbery, as in larceny, it is essential that the taking of the goods be animo furandi. Unless the taking be with a felonious intent it is not robbery. If a man, under a bona fide belief that the property is his own, obtain it by menaces, that is a trespass, but no robbery," citing a number of English common law cases to support the doctrine announced. The court further holds that "in all cases of this kind, the question whether the act was done with a felonious intent, is one of fact for the jury. The evidence rejected by the court below tended to show there was no felonious intent on the part of the accused, and it should have been admitted for that purpose. While the evidence rejected did not afford a justification of the act of the defendant, it was admissible to show that it was not a felony, and in this case might authorize a verdict of not guilty of the crime of robbery for which he is indicted." We take it, that is an extreme case, and the facts detailed doubtless appealed very strongly to the court to extend the doctrine to the effect that where a man collects a just debt by force it is not robbery. In that case, no doubt in any court, Hollyway would have been entitled to have recovered his calves back on failure of Hamilton to pay him the cash money as he promised on restoration by Hollyway of the money he had already received. Extreme cases sometime make bad law. At any rate, we are not willing to lay down the proposition that if a man collects a debt by force and threats, and putting in fear, he will not be guilty of robbery. There might be peculiar facts and circumstances which would exonerate him, and which the jury might consider in mitigation of the punishment, but no man has a right, as we understand the law, to take the law in his own hands, and at the point of a sixshooter, putting his debtor in fear of his life or serious bodily injury, collect a debt, however just, and then defend against it on the ground that the property was not fraudulently taken because appellant owed him the money and would not pay him. This is more than a simple trespass, and it will be a dangerous doctrine to hold that a man can thus collect his debts. If it was specific property that appellant had a right to, under the circumstances he might use force to get or regain possession of same without being guilty of robbery; and under the circumstances of this case where appellant had no right to any specific property, the prosecutor owing him a debt for wages, the amount of which was even controverted, and he simply drew a pistol and made prosecutor pay him what he (appellant) claimed was due, we hold that this was not a good defense, and the court did not err in charging the jury as he did. The court, however, should have instructed the jury on the evidence of appellant, that if prosecutor assaulted him with a stick and

he then drew his pistol in self-defense against a threatened assault of prosecutor, and that he did not use said pistol to coerce prosecutor to pay him his debt, but merely to defend himself, and prosecutor paid him the money without being forced to do so by appellant, that they would acquit him. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*