# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-00077-SCT

*RICO VEAZY AND BRANDON MOSLEY a/k/a*
*BRANDON DUANE MOSLEY*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2010 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | CHARLES E. GRIFFIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/14/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Rico Veazy and Brandon Mosley were convicted of armed robbery and were sentenced to eight years and ten years, respectively, in the custody of the Mississippi Department of Corrections (MDOC) after being tried together in the Bolivar County Circuit Court. The robbery involved a Mustang vehicle belonging to Veazy but undergoing repairs by mechanic Jimmy Smith, who maintained that the vehicle was taken from his automobile

repair shop at gunpoint. Finding no merit in any of the defendants' issues, we affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS IN TRIAL COURT

¶2. At some point in February 2010, Veazy had his 1989 Ford Saleen Mustang brought to Jimmy's Repair Shop, owned by mechanic Jimmy Smith, in Cleveland. Three of the vehicle's tires were slashed, the windshield was badly damaged, and the transmission was "locked up." Smith repaired the transmission and replaced other parts, and Veazy's mother, Bobby Veazy,[1] paid the bill for this work. After this payment, Smith did other work on the car, including purchasing various parts with his own funds and installing them. The parties dispute whether this additional work was requested or authorized by Veazy.

¶3. On July 9, 2010, Veazy came into Smith's shop, accompanied by Brandon Mosley, who was unknown to Smith at the time. Veazy and Mosley joined Smith inside his office. At this point, the testimony of the defendants and Smith diverges dramatically. According to Smith, he began working on a ticket for the work done, and Veazy and Mosley agreed to wait while it was drawn up. Mosley surreptitiously positioned himself behind Smith and then placed a pistol to his head, demanding the keys to the Mustang. Smith testified that, at this point, he feared for his life.

¶4. Smith told Veazy that the keys were hidden elsewhere on the property, and that Veazy should not shoot him if he wanted the keys. Smith testified that he believed that he would have been killed had the keys been with him in the room. Smith then left his office, collected

_____

[1]Mrs. Veazy's name is sometimes spelled "Bobbie" and "Bobbi" in the briefs, but it is spelled "Bobby" in the trial transcript.

the keys from a hot water vat in which he had kept them hidden, and led the defendants to the Mustang, which he proceeded to start. The defendants followed Smith closely on the walk to the vehicle, with Mosley keeping the gun concealed with a small towel. At no point during this sequence did Veazy pay for the work done or the parts installed in his vehicle.

¶5.    Veazy and Mosley got into the car and began to drive off. Smith then ran to his truck and collected a firearm. He shouted to his employees to call 9-1-1. Smith testified that Veazy was backing up and that he believed one of his mechanics, Jose Rojas, was in danger of being run over. Smith therefore fired at the vehicle three times to prevent Veazy from injuring or killing Rojas. These warning shots resulted in the back windshield of the Mustang being blown out.

¶6.    Smith's testimony was corroborated in part by Rojas and two other mechanic-employees, Sammy Murray and Donny Berryhill, who were working at the shop on that day. Smith was the only witness who testified to seeing Mosley with a gun. But the three mechanic-employees, Rojas, Murray, and Berryhill, testified that Smith shouted for someone to call 9-1-1 because someone had a gun.

¶7.    Veazy and Mosley testified to a very different sequence of events. According to Veazy, he authorized work only on the transmission, windows, and new tires. He claimed that Smith rebuilt the engine, worked on the heads of the engine, replaced a mirror, did body work, and balanced the tires without his authorization. Veazy stated that on July 9, 2010, he collected the vehicle from Smith without confrontation, anger, or ever exhibiting a firearm. He stated that he did not even have a firearm at the time, and was unaware of whether Mosley had a weapon. Veazy did state that Smith had prepared a ticket for him when he

3

collected the vehicle, but he believed that this ticket was merely a copy of one already paid by his mother, Bobby. Rico believed that all work had been paid for.

¶8.     Veazy stated that Smith had cranked the car himself and then handed the key to Veazy. However, as Veazy and Mosley began to leave the premises in the Mustang, Smith began yelling and then started firing upon the vehicle. Veazy was surprised by this behavior and did not know why Smith had shot at him. Mosley similarly testified that he came to the shop with Veazy unarmed, and never exhibited a weapon. Mosley did testify that if he had exhibited a weapon, he did not think he would admit having done so. Mosley confirmed that after he and Veazy had obtained the car without incident, Smith had begun to fire upon the vehicle without apparent provocation.

¶9.     After driving off after the incident, Veazy and Mosley left the car behind a barn on the side of Highway 8 East. Veazy testified that he abandoned the vehicle because it ran out of gas. Despite having been fired upon without apparent cause, neither defendant attempted to alert the police to Smith's actions. Later that same day, Veazy turned himself in to the Cleveland Police Department. However, he testified at trial that he did not know that he was wanted by the police until the next day. Veazy stated that he turned himself in after his mother received a phone call, but he did not state who made the call or what information was conveyed.

¶10.    The trial for Veazy and Mosley commenced on November 29, 2010, and concluded on December 2, 2010. They both were convicted of armed robbery. Veazy received an eight-year sentence and Mosley received a ten-year sentence, both to be served in the custody of the MDOC. Veazy and Mosley filed separate appellate briefs but asserted the same

4

assignments of error: (1) that the trial court erred in refusing to quash the indictment; (2) that the property set out in the indictment was not "the personal property of another" for purposes of Mississippi Code Section 97-3-79 (Rev. 2006); (3) that the trial court erred in refusing to permit testimony concerning the intent of the defendants and for the purpose of impeaching Jimmy Smith's testimony; and (4) that the trial court erred in refusing a jury instruction concerning criminal intent. We find that all of these issues lack merit, and we affirm the judgment of the circuit court.

## DISCUSSION

### A. The Indictment

¶11.    The first two issues are closely related – both addressing the same perceived flaw in the indictment – and may be addressed together. Armed robbery is defined as follows:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79 (Rev. 2006). Robbery has three essential elements: "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence." *Croft v. State*, 992 So. 2d 1151, 1157 (Miss. 2008) (quoting *Walker v. State*, 913 So. 2d 198, 223 (Miss. 2005)).  Armed robbery requires the additional element of exhibition of a deadly weapon.  *Clark v. State*, 756 So. 2d 730, 732 (Miss. 1999) (stating "[T]he proof of the crime of armed robbery must necessarily include that the exhibition of the deadly weapon, causing

5

violence or fear of immediate injury, was the means by which the personal property of another was taken.").

¶12.    The defendants allege that the third element of armed robbery was not met, in that the State alleged no "property of another" that could have been stolen, and that the defendants were therefore entitled to judgment notwithstanding the verdict (JNOV). They argue that it is undisputed that the Ford Mustang was the property of Veazy. The State maintains that Smith had the rightful possession of the vehicle, since "[a]ll motor vehicles repaired for any person, and *at his instance*, shall be liable for the price of the labor and material employed in constructing, manufacturing or repairing the same; and the mechanic to whom the price of said labor and material may be due shall have the right to retain possession of such motor vehicles so repaired until the price be paid." Miss. Code Ann. § 85-7-107 (Rev. 2011) (emphasis added). However, the defendants maintain that the unpaid balance represented certain repairs performed by Smith but not authorized by Veazy.   Furthermore, the defendants contend that, even if Smith maintained a possessory interest in the vehicle, it was still not his property under the meaning of the armed-robbery statute.

¶13.    The defendants also contend that the trial court erred in failing to quash the indictment. The indictment against the defendants stated, in part, as follows:

> RICO VEAZY AND BRANDON MOSLEY, late of the County and Judicial District aforesaid, on or about July 9, 2010, in the County, Judicial District and State aforesaid, and within the jurisdiction of this Court, individually or while aiding and abetting and/or acting in concert with each other, did unlawfully, willfully and feloniously, *take a Ford Mustang containing or to which was affixed, the property of Jimmy Smith or Jimmy's Repair Shop, Inc., by way of repair and/or parts placed by Jimmy's Repair Shop, Inc.*, from the person or presence of and against the will of Jimmy Smith by violence to his person or by putting him in fear of immediate injury to his person by the exhibition of

6

a deadly weapon, a pistol, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.

(Emphasis added.) The defendants argue that this indictment alleged no property that could have been stolen. They note that the State may not pursue a "general" indictment alleging theft without alleging the specific property in question. *See **Khang Son Nguyen, et al. v. State***, 761 So. 2d 873 (Miss. 2000).

¶14.    The determinative question for both issues, then, is whether a person may commit robbery by taking through force or the threat of force his own property, when another (as, here, an uncompensated mechanic) has the right of possession of that property. This is a relatively unusual fact pattern, but it is not an issue of first impression in Mississippi. Both the defendants and the State cite the case of ***Herron v. State***, 176 Miss. 795, 170 So. 536 (1936), which bears some similarity to this case.

¶15.    In ***Herron***, Charlie Morris made a trade with Tom Herron, the father of defendant Lehman Herron, to sell him a mule, taking as part payment a mare, along with a cash payment of $50 and a note for the balance.  Morris maintained control of the mare in the interim, and he and Frank Kincade were leading the mare to be bred when, according to the State's witnesses, the two Herrons confronted them and demanded possession of the mare at gunpoint. Lehman Herron, at trial, insisted that he never exhibited a gun. The Herrons took the mare home, and that same day attempted to deliver the mule to Morris, but he refused to accept it. Lehman Herron contended that the evidence was insufficient, under law, to maintain a conviction, since the mare was his property.

7

¶16.    This Court found otherwise, determining that, since the mare was merely pledged to secure a cash payment, "Morris still was the rightful owner of the mare, and had, at all events, title of possession and a lien for the purchase price of $50 in cash to be paid for the mule. This was a sufficient title in Morris to sustain the allegations of property in him, and to make out his ownership of the property." *Herron*, 170 So. at 537-38. This Court went on to hold that "[i]f the appellant had the right to the immediate possession, the taking might not constitute robbery, but only trespass, but here he had no right of possession, and knew the facts which gave Morris possession of the property." *Id.* at 538. This Court also approvingly quoted the Texas case of *Fanin v. State*, stating that:

> We are not willing to lay down the proposition that if a man collects a debt by force and threats, and putting in fear, he will not be guilty of robbery. There might be peculiar facts and circumstances which would exonerate him, and which the jury might consider in mitigation of the punishment, but no man has a right, as we understand the law, to take the law in his own hands, and at the point of a six-shooter, putting his debtor in fear of his life or serious bodily injury, collect a debt, however just, and then defend against it, on the ground that the property was not fraudulently taken because appellant owed him the money, and would not pay him. This is more than a simple trespass, and it will be a dangerous doctrine to hold that a man can thus collect his debts.

*Herron*, 170 So. at 538 (citing *Fanin v. State*, 51 Tex. Crim. 41, 45, 100 S.W. 916, 918 (Tex. Crim. App. 1907)). Since *Herron*, it has consistently remained the law of this State that debts should not be collected, in the charmingly archaic language of *Fanin*, "at the point of a six-shooter," or otherwise by force or threat of force.

¶17.    Several decades after *Herron* was decided, this Court addressed a similar instance of what might be considered vigilante debt collection. In *Freddie Lee Williams v. State*, 317 So. 2d 425 (Miss. 1975), this Court was confronted with the case of a defendant who

8

attempted to collect a refund on recently purchased shoes at gunpoint. Williams had

purchased a pair of shoes for $25.15 on February 9, 1974, and, according to him, was

informed by the sales clerk that the shoes could be returned if they did not fit. On February

11, 1974, Williams attempted to return the shoes for a refund or exchange, but was informed

that the store would not accept scuffed shoes. Angrily, Williams returned later in the day with

a pistol. At gunpoint, Williams returned the shoes, displayed the sales slip, and demanded

exactly the sales amount, $25.15, and no more, from the cash register. This Court was unable

to "accept appellant's argument that his alleged 'good faith' taking of a sum of money

entitled him to a peremptory instruction." *Williams*, 317 So. 2d at 427. This Court cited

*Herron* and *Fanin* with approval, and determined that:

> The record shows that the appellant brazenly entered the store, cocked his
> pistol, disturbed the peace, harassed the store employees, aimed the loaded
> pistol at Reynolds, called him a son-of-a-bitch an [sic] in "wild-west" fashion
> took at gun point money -- the property of another. Such violent self-help as
> a means of obtaining redress for grievances concerning property rights is
> inimical to order and the appropriate administration of justice. It would be
> most unjudicious to accept his argument that such a caper was done in good
> faith without *animus furandi*, and that, therefore, the case should not have
> gone to the jury.

*Williams*, 317 So. 2d at 428.

¶18.    In today's case, it is well established that, while Veazy had title to the Mustang, Smith

had the right of possession of the Mustang through his mechanic's lien under Mississippi

Code Section 85-7-107. *See also **J.A. Broom & Son v. S.S. Dale & Sons***, 109 Miss. 52, 67

So. 659 (1915) (holding that the holder of a mechanic's lien takes precedence over the rights

9

of the holder of a reserved title to an automobile).[2] After reviewing this State's longstanding

jurisprudence on the issue, we are convinced that robbery relates to possession of property,

not to title. It is well established that a robber cannot acquire title to property by seizing it

forcibly. *Allstate Ins. Co. v. Estes*, 345 So. 2d 265, 266 (Miss. 1977). At best, he can acquire

unlawful possession without title. Indeed, a thief also may steal goods in which the victim

has no legal title. This Court has held that contraband liquor -- in which a person can have

no titled ownership interest -- may be the subject of a larceny or a robbery. *Passons v. State*,

208 Miss. 545, 45 So. 2d 131, 134 (1950) (overruled on other grounds). More recently, the

Court of Appeals has extended this holding to the theft of illegal narcotics. *Woods v. State*,

883 So. 2d 583, 588 (Miss. Ct. App. 2004).

¶19.    Furthermore, in *Bullock v. State*, 391 So. 2d 601, 609 (Miss. 1980), a capital-murder

case, there was some dispute as to whether a car taken from the victim during the course of

a robbery and murder actually belonged to the victim. The issue was found to be moot where

---

[2]Although there was some dispute at trial as to whether Rico and Bobby Veazy had authorized some of the work on the car, this was an issue of fact that was resolved by the jury when it determined that a robbery had occurred. The jury was properly instructed in the relevant law, with Jury Instruction D-8 providing that:

> Under Mississippi law, a repair shop does not acquire an ownership interest in a motor vehicle by virtue of performing repairs or placing parts on the motor vehicle at the instance of the owner.
> Jimmy Smith and/or Jimmy's Repair Shop did not acquire an ownership interest in Rico Veazy's Ford Mustang by virtue of any repairs or parts placed on the motor vehicle.
> However, the mechanic to whom the price of said labor and material may be due shall have the right to retain possession of such motor vehicle so repaired *until the price has been paid*.

(Emphasis added.)

the testimony was undisputed that the victim was in *possession* of the vehicle, with this Court specifically holding that "[a]n indictment charging robbery or larceny of property is properly laid in the party having possession, either as owner, bailee or agent." *Id.* at 609 (citations omitted).

¶20.   Finally, the defendants suggest that the Legislature did not intend for the armed robbery statute, Mississippi Code Section 97-3-79 (Rev. 2006), to go so far as to cover the forcible taking of property subject to a lien. In support of this argument, the defendants cite Mississippi Code Sections 97-17-77, criminalizing the removal of property subject to an out-of-state lien; 97-17-75, criminalizing the removal or sale of property subject to an out-of-county lien; and 97-19-51, criminalizing the sale of personal property previously sold or encumbered. The defendants note that "[w]hen different code sections deal with the same subject matter, these sections are to be construed and interpreted not only so they harmonize with each other but also where they fit into the general and dominant policy of the particular system of which they are part." *Andrews v. Waste Control, Inc.*, 409 So. 2d 707, 713 (Miss. 1982). However, the statutes cited by the defendants do not apply to a case like today's case, where encumbered personal property is taken by force or the threat of force; nor do these statutes demonstrate a general legislative intent to exclude property subject to liens from the application of the robbery statute.

¶21.   In line with Mississippi precedent, this Court finds that, when a person takes property in which he himself maintains title, but which is legally in the possession of the victim, by force or threat of force by exhibition of a deadly weapon, the armed-robbery statute applies. Accordingly, it was not error for the trial court to refuse to quash the indictment, and the

11

defendants were not entitled to a JNOV on these grounds. We therefore find that the defendants' first and second assignments of error are without merit.

### B. Hearsay

¶22.     The defendants contend that, on a series of occasions, the trial court erred in failing to permit Bobby and Rico Veazy to introduce hearsay testimony regarding comments allegedly made by Jimmy Smith. They contend that the denial of these statements "denied due process and rendered the trial fundamentally unfair." A trial court's decisions as to admitting and refusing evidence are reviewed under an abuse-of-discretion standard, and this Court will not reverse for reason of error in an evidentiary decision unless it is shown that the error adversely affected a substantial right of a party. *Hargett v. State*, 62 So. 3d 950, 952-53 (Miss. 2011). We find that the statements the defendants sought to admit constituted inadmissible hearsay to which no exceptions applied, and the trial court therefore committed no error in denying the admission of the statements.

¶23.     As to the one instance of hearsay testimony that would have been introduced by Bobby Veazy, Veazy's attorney made a proffer after Bobby's testimony was excluded, stating that he believed "the testimony would be that Mr. Smith, the complaining witness in this case, did, in fact, call her immediately after this event occurred; that Mr. Smith told her that he had just shot out the car window, the back window of Rico Veazy's vehicle; that he had seven bullets left, and he would finish [Veazy] off when he sees him." We determine that this evidence was properly excluded; not only was it clear hearsay that did not fall under any hearsay exception, the statement also was irrelevant to our case today. Smith was not charged with any crime in this case. Additionally, both the shooting out of the window and the

12

alleged threat occurred *after* the robbery of the vehicle. Even if the testimony were relevant, the probative value of such a statement was substantially outweighed by the danger of unfair prejudice. Miss. R. Evid. 403.

¶24. The record does not show the content of the hearsay statements of Smith that Veazy would have offered. Veazy attempted to testify as to statements made by Smith on at least three separate occasions. At each of these instances, the State objected on hearsay grounds, and the objections were sustained. The defendants did not attempt to dispute the trial court's ruling and made no proffer of what Veazy would have stated. The defendants further assert that the State was permitted to introduce hearsay testimony through its own witnesses, but they give no examples of this and we find none in the record. Even assuming that the State was improperly permitted to introduce hearsay testimony, a party cannot "open the door" to hearsay. *Mixon v. State*, 921 So. 2d 275, 278 (Miss. 2005) (citing *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984)).

¶25. The defendants attempted to introduce the various hearsay statements, relying in part upon Mississippi Rule of Evidence 803(24), the "catch-all" hearsay exception. At trial, defense counsel also mentioned Mississippi Rule of Evidence 803(1), the "present-sense impression" exception, but this argument has not been raised on appeal. On appeal, the defendants also attempt to raise Mississippi Rule of Evidence 803(3), the hearsay exception for a then-existing mental, emotional, or physical condition; however, this argument was never raised at trial and therefore need not be considered. *See, i.e., Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1060 (Miss. 2005), holding that "[t]his Court [will] not entertain arguments made for the first time on appeal . . . ."

13

¶26. The defendants also contend that they should have been permitted to make these hearsay responses under Mississippi Rule of Evidence 106, Mississippi's codification of the common-law doctrine of completeness.

¶27. We find that the various statements that the defendants assert should have been admitted all constituted inadmissible hearsay to which no exception has been shown to apply. The defendants have failed to show that the trial court abused its discretion in denying the admission of the statements. This assignment of error is without merit.

### C. Jury Instructions

¶28. In their final assignment of error, the defendants contend that the trial court failed to instruct the jury on the issue of criminal intent. The defendants note our holding that:

> The court must so instruct the jury in every robbery case, and must in some sufficient form explain and define the term "felonious intent." The extent of the definition required depends upon the evidence in the particular case. *State v. Spratt*, N.C., 144 S.E.2d 569 [(N.C. 1965)]. In some cases, as where the defense is an alibi or the evidence develops no direct issue or contention that the taking was under a bona fide claim of right or was without any intent to steal, "felonious intent" may be simply defined as an "intent to rob" or "intent to steal." *State v. Spratt*, *supra*. On the other hand, where the evidence raises a direct issue as to the intent and purpose of the taking, a more comprehensive definition is required.

*Thomas v. State*, 278 So. 2d 469, 473 (Miss. 1973) (citations omitted). The defendants argue that, in this case, the trial court erred in sustaining the State's objection to jury instruction D-7, which would have informed the jury that:

> The State of Mississippi is required to prove beyond a reasonable doubt that Rico Veazy took the personal property of Jimmy Smith and/or Jimmy's Repair Shop with the intent to permanently deprive Jimmy Smith and/or Jimmy's Repair Shop of said property.
> The Ford [M]ustang is the property of Rico Veazy.

14

> If you find that the only personal property taken by Rico Veazy was the Ford [M]ustang, the law requires you to find Rico Veazy not guilty.

The State objected to this instruction on the ground that there is no requirement in an armed-robbery case that an accused must be proven to have intended to permanently deprive the victim of possession of the property. The trial court denied it as, in part, cumulative to the instruction on the elements of armed robbery.

¶29.    At this point, the defense indicated that it would not object to the striking of the "permanently deprive" language. The Court then noted that there was no testimony that Smith owned the Mustang, but that he might well have had a lien. The defense agreed, but asserted that Smith had no right to hold the vehicle and that the jury might be confused without an instruction on whether Smith had acquired an ownership interest. The Court then offered to give an amended version of D-7. The State and the defense both stated that they would have no objection if the instruction informed the jury that a mechanic to whom the price of labor or material is due shall have the right to retain possession; however, the defense wanted to add language that repair or parts installed had to be done at the owner's direction. The apparent result was Instruction D-8, which was offered to the jury, and reads as follows:

> Under Mississippi law, a repair shop does not acquire an ownership interest in a motor vehicle by virtue of performing repairs or placing parts on the motor vehicle at the instance of the owner.
> Jimmy Smith and/or Jimmy's Repair Shop did not acquire an ownership interest in Rico Veazy's Ford Mustang by virtue of any repairs or parts placed on the motor vehicle.
> However, the mechanic to whom the price of said labor and material may be due shall have the right to retain possession of such motor vehicle so repaired until the price has been paid.

15

The record shows that the defendants consented to the substitution of D-8 for D-7, and in so doing effectively withdrew or abandoned their request for D-7. At a more fundamental level, proposed Jury Instruction D-7 was erroneous in that it would have suggested to the jury that a person cannot be guilty of armed robbery if someone other than the victim has title to the property taken. As discussed above, this is not the case. The trial judge correctly refused an instruction that would have included an erroneous statement of the law. For all of the above reasons, we find that this assignment of error, too, lacks merit.

## CONCLUSION

¶30.  Based on today's discussion, we find no merit in any of the defendants' assignments of error. Thus, we affirm the judgment of the Circuit Court for the Second Judicial District of Bolivar County.

¶31.  **AS TO RICO VEAZY: CONVICTION OF ARMED ROBBERY AND SENTENCE OF EIGHT (8) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ALL PRIOR SENTENCES.**

¶32.  **AS TO BRANDON MOSLEY: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ALL PRIOR SENTENCES.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., PIERCE, KING AND COLEMAN, JJ., CONCUR.  KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.**

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶33.    The great Muddy Waters[3] himself could not have done a better job than the appellants and their able counsel of trying to "muddy the waters" of this case. Yet, this remains a straightforward and simple armed robbery case, and I join the majority in affirming the convictions. However, I write separately to suggest, with utmost respect to the majority, that affirmance could have been achieved with considerable economy of verbiage.

¶34.    The indictment properly charged Veazy and Mosley with armed robbery by saying, in essence, that they stole auto parts that belonged to Smith, from Smith's presence and against Smith's will, by putting Smith in fear of immediate injury to his person by the exhibition of a deadly weapon, namely, a pistol. While the indictment does contain some surplusage, that is the thrust of it, and that is the State's theory of the case. The jury was properly instructed, consistent with the charging language of the indictment.

¶35.    Even though the defendants vigorously disputed and valiantly defended against the accusation laid in the indictment, the proof of guilt was sufficient, and they were duly convicted. Smith's claim of a mechanic's lien on Veazy's automobile, a vehicle which contained components that still belonged to Smith because Veazy had not paid for them, is relevant only to the extent that it supports the State's contention that Smith did not willingly part with the automobile parts. In short, the defendants were not prosecuted for stealing Veazy's own car; they were prosecuted for, and convicted of, stealing, at gunpoint, Smith's automobile parts that were affixed to Veazy's car.

---

[3] *Muddy Waters* was the stage name of McKinley Morganfield (1913-1983), renowned Mississippi blues musician.

17

¶36. Thus, the majority's protracted analysis about debts and liens, in my humble opinion, is superfluous and unnecessary. I would have traveled a much shorter route to arrive at the same destination as that reached by my esteemed colleagues in the majority.

**CHANDLER, J., JOINS THIS OPINION.**